STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

MAXINE HART PREWITT, INTERDICT

VERSUS

MALCOLM RODRIGUES d/b/a RODRIGUES AND SON LOGGING and
MAX W. HART, JR., IN SOLIDO

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 48976
HONORABLE CHARLES B. ADAMS, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters and J. David Painter, Judges.

AFFIRMED.

William D. Dyess
P.O. Drawer 420
Many, LA  71449
Counsel for Defendant-Appellant
    Max W. Hart, Jr.

Edwin Dunahoe
P.O. Box 607
Natchitoches, LA  71458
Counsel for Plaintiff-Appellee
    Maxine Hart Prewitt, Interdict

PAINTER, Judge.

The Defendant, Max Hart, Jr., appeals the determinations of the trial court in connection with a suit against him for timber trespass. We affirm.

FACTS

Max Hart, Jr. (Hart) and Maxine Hart Prewitt (Prewitt) are the children of Max Hart, Sr. After the death of Max Hart, Sr., Hart and Prewitt became co-owners in indivision of a number of tracts of land in Texas, Arkansas, Oklahoma and Louisiana, including the three tracts in Sabine Parish, Louisiana with which this case is concerned. Prewitt is interdicted and, in 1994, her daughter, Debra Ireland, became her curator. Over the years, attempts were made to partition the property. A suit was filed in Nagodoches County, Texas, which, after mediation in 1995, resulted in a proposed settlement, the validity of which is in question here.

In 1996, Hart contacted Malcolm Rodrigues d/b/a Rodrigues and Son Logging (Rodrigues), to cut timber on three tracts of land in Sabine Parish, Louisiana. Rodrigues had cut the timber on at least one of the tracts before Fred Smith, a forest consultant working for Prewitt's estate, found out about the cutting and notified Prewitt's attorneys. Ireland, acting on behalf of Prewitt, filed this suit naming Hart and Rodrigues as defendants, alleging timber cutting in violation of La.R.S. 3:4278, et seq., and asking for an injunction and treble damages. The Plaintiff subsequently petitioned the court for authority to salvage the cut timber remaining on the three tracts. The court granted an injunction prohibiting Hart and Rodrigues from logging on the property belonging in whole or in part to Prewitt and authorizing Ireland to salvage and sell the cut timber remaining on the property. The proceeds of the salvage operation were later deposited into the registry of the court and were ultimately released to Prewitt.

Hart answered and reconvened asking for reimbursement of property taxes paid and for timber cut and sold by Prewitt's representatives, and for cancellation of certain

judgments against him. He further alleged that due to the actions of Prewitt's representatives, he lost the opportunity to lease or sell certain property belonging to the estate of Max Hart, Sr.

Rodrigues filed a cross-claim and reconventional demand against Hart asking for compensation for loads of timber he cut but was enjoined from hauling and selling.

The case was consolidated with two other cases concerning the same parties: one by Hart to enforce the settlement agreement and another to partition the co-owned property. Prewitt filed a motion for summary judgment on the Texas settlement agreement asserting that no material issue of fact remained but that the settlement agreement was never consummated because neither party wanted it. The motion was later denied by the court.

Prior to trial, the Plaintiff moved to restrict Hart from introducing evidence concerning the offsets claimed in his reconventional demand due to Hart's failure to respond to discovery directed to this issue. The trial court ruled in favor of Prewitt and restricted Hart to a bench trial on the offsets.

The partition suit was heard and, since the trial court found the Texas settlement ineffective, partitioned the property on December 4, 2002. In September 2003, the timber trespass was tried to a jury and the offset claimed by Hart was tried by the court.

As to Hart, the jury rendered a verdict in the form of jury interrogatories, as follows:

> INTERROGATORY NUMBER 1: Do you find by a preponderance of the evidence that Max Hart, Jr., cut, felled, destroyed, removed or diverted for sale or use any trees or authorized or directed his agents or employees to cut, fell, destroy, remove or divert for sale or use any trees which belonged one-half (½) to Maxine Hart Prewitt, without her consent?
>
> YES __X__          NO_____

2

INTERROGATORY NUMBER 2: State, in terms of dollars, the fair market value of the total timber cut, felled, destroyed, removed or diverted for sale or use by Max Hart, Jr. or his agents or employees, but do not reduce the amount because of the credit from the salvaged timber to which the parties stipulated.

$ 195,262.00

INTERROGATORY NUMBER 3: If you answered Interrogatory Number 1 "YES", do you find the actions of Max Hart, Jr. were willful and intentional?

YES __X__          NO_____

INTERROGATORY NUMBER 4: Please state whether the circumstances in this case prove that Max Hart, Jr. has (sic) in good faith but should have been aware that his actions were without consent or direction of Maxine Hart Prewitt.

YES_____          NO__X__

INTERROGATORY NUMBER 5: Do you find that Max Hart, Jr. was in good faith but failed to make payment within thirty (30) days after notification and demand by Maxine Hart Prewitt for her portion of the proceeds of the timber sale?

YES_____          NO__X__

INTERROGATORY NUMBER 6: State, in terms of dollars, the amount of attorney's fees, if any, that Max Hart, Jr. owes to Maxine Hart Prewitt:

$ 11,000.00

The court rendered judgment in favor of Prewitt and against Hart in the amount of $302,553.39, representing the fair market value of the timber interest of Prewitt multiplied by three, and $11,000.00 in attorney's fees. Credits were granted for $15,294.13, representing one-half the value of the funds distributed from the registry of the court, and for $1,340.81, representing property taxes paid by Hart. The judgment granted interest. Judgment was further granted in favor of Prewitt against Rodrigues for $89,000.00, representing the fair market value of the timber he cut, times three, plus $11,000.00 in attorney's fees; and in favor of Rodrigues and against Hart for $11,000.00.

3

The jury entered the following verdict as to Rodrigues:

INTERROGATORY NUMBER 1:  Do you find by a preponderance of the evidence that Malcolm Rodrigues cut, felled, destroyed, removed or diverted for sale or use any trees or authorized or directed his agents or employees to cut, fell, destroy, remove or divert for sale or use any trees which belonged one-half (½) to Maxine Hart Prewitt, without her consent?

YES __X__                NO_____

INTERROGATORY NUMBER 2:  State, in terms of dollars, the fair market value of the total timber cut, felled, destroyed, removed or diverted for sale or use by Malcolm Rodrigues, but do not reduce the amount because of the credit from the salvaged timber to which the parties stipulated.

$_52,000.00_

INTERROGATORY NUMBER 3:  If you answered Interrogatory Number 1 "YES", do you find the actions of Malcolm Rodrigues, his agents and/or employees, were willful and intentional?

YES _____              NO__X__

INTERROGATORY NUMBER 4:  Please state whether the circumstances in this case prove that Malcolm Rodrigues was in good faith  but should have been aware that his actions were without consent or direction of Maxine Hart Prewitt.

YES__X__                  NO_____

INTERROGATORY NUMBER 5:  Do you find that Malcolm Rodrigues was in good faith but failed to make payment within thirty (30) days after notification and demand by Maxine Hart Prewitt for her portion of the proceeds of the timber sale?

YES_____                  NO__X__

INTERROGATORY NUMBER 6:  State, in terms of dollars, the amount of attorney's fees, if any, that Malcolm Rodrigues owes to Maxine Hart Prewitt:

$_11,000.00_

INTERROGATORY NUMBER 7:  Is Malcolm Rodrigues is entitled to be reimbursed from Max Hart, Jr. for any amount that Malcolm Rodrigues owes to Maxine Hart Prewitt because of Malcolm Rodrigues' detrimental reliance.

YES__X__                 NO_____

4

If so, what dollar amount is Malcolm Rodrigues entitled to be reimbursed?

$ 11,000.00

Rodrigues moved for a Judgment Notwithstanding the Verdict. The trial court granted the JNOV and entered a judgment stating that, as between the Plaintiff and the Defendants, the $195,262.80 listed as the fair market value of the timber removed by Hart encompasses the $52,000.00 listed as the fair market value of the timber removed by Rodrigues, and the Plaintiff could not recover both. Hart moved for and was denied a new trial.

Hart then moved for a suspensive appeal. Prewitt answered the appeal asking for additional attorney's fees on appeal.

## DISCUSSION

### JURY TRIAL

Hart asserts that the trial court improperly denied him the right to a jury trial on issues raised in his Answer & Reconventional Demand.

On December 13, 2002, Prewitt propounded interrogatories and a request for production of documents to Hart directed to the allegations made in his reconventional demand with regard to offsets for taxes and for timber cutting on behalf of Prewitt. When no answers were made, Prewitt filed a Motion to Compel, which the court granted. In its judgment on the motion, the court directed Hart to answer the interrogatories no later than March 10, 2003. In August 2003, Prewitt filed a Motion in Limine alleging that no answers to the December 12 interrogatories and request for production had been received. Prewitt asked that the court enter an order prohibiting Hart from introducing at trial any documents purporting to show payment of property taxes by Hart or cutting of timber on behalf of Prewitt. The trial court entered a ruling

5

prohibiting Hart from presenting evidence to the jury concerning the claimed offsets and limiting him to a bench trial on these issues.

Hart seems to argue that, once it was requested and the bond posted, he was absolutely entitled to a trial by jury under La.Code Civ.P. art. 1735 and 1736. La.Code Civ.P. art. 1736 states that: "The trial of all issues for which a jury trial has been requested shall be by jury, unless the parties stipulate that the jury trial shall be as to certain issues only or unless the right to trial by jury as to certain issues does not exist. . . ."

However, it is clear that, where a party has failed to obey the court's order regarding discovery, La.Code Civ.P. art. 1471 allows the court to "refus[e] to allow the disobedient party to support or oppose designated claims or defenses, or prohibit[] him from introducing designated matters in evidence." We find no authority which would limit this statute to non-jury cases. Had it so chosen, the court could have completely denied Hart the right to present evidence on these claims. Rather, the trial court merely prohibited the introduction of the pertinent evidence to the jury, limiting Hart to a bench trial on offset. We find this sanction to be well within the discretion allowed the trial court by La.Code Civ.P. art. 1471.

AMENDMENT OF HART'S PETITION

Hart asserts that the trial court erred in failing to allow him to amend and supplement his petition and in denying him the right to pursue the claims he set forth in that amendment.[1]

"The trial court has vast discretion in determining whether to refuse or allow amendments to the pleadings after an answer is filed and its determination will not be disturbed on appeal absent an abuse of that discretion." *Adams v. Canal Indemnity Co.*, 99-1190, p. 10 (La.App. 3 Cir. 5/10/00), 760 So.2d 1197, 1203, *writs denied*,00-1636, 00-1367, 00-1640 (9/22/00), 769 So.2d 1213. *See also* La.Code Civ.P. art. 1151. A comparison of the proposed amendment with the original demand, shows few if any differences. The proposed amendment raises no new issues. Therefore, we find no abuse of discretion in the denial.

VALIDITY OF THE TEXAS SETTLEMENT

Hart argues that the settlement agreement reached in Texas in 1995 was a valid and enforceable settlement agreement and that the trial court erred in failing to recognize it.[2] In 1995, a mediation was held in Nacodoches, Texas, in an attempt to reach an agreement to partition the property co-owned by Hart and Prewitt. The results of the negotiation were memorialized in a written memorandum entitled "Settlement Agreement" which was signed by the parties and/or their representatives. However, the agreement is without effect by law, as acknowledged in the terms of the memorandum. Because Prewitt is an interdict, no agreement selling or exchanging her interest in real property could be entered without court approval. *See* La.Code Civ. P. art. 4641 and 4301, and Tex. Prob. Code Ann. § 821 (Vernon Supp. 1996).

---

[1] We note that Hart has failed to refer to the record to support his allegations, as required by the Uniform Rules of the Courts of Appeal. For this reason, this court could have refused to consider this assignment of error.

[2] This argument is interesting in that, if it were to be upheld, at least one of the tracts cut by Hart in 1996 would have been wholly owned by Prewitt, pretermitting his arguments as to the applicability of La.R.S. 3:4278.1 with regard to those tracts.

Further, the memorandum itself contemplates both the reduction of the memorandum to a final settlement document and the submission of that document for court approval pursuant to the Texas Guardianship Code. There is nothing of record indicating that the settlement ever gained court approval. Hart's own deposition testimony supports the finding that no approval was ever sought or received. His deposition testimony indicates that, upon the result of the mediation being reduced to a final settlement agreement, he refused to sign it because he was not in agreement with its terms, especially language indicating that all mineral rights would continue to be owned in indivision.

As a result, we find no error in the trial court's determination that the Texas mediation did not result in a valid settlement agreement partitioning the property of the parties to this suit.

LA.R.S. 3:4278.1 AND CO-OWNERS

Hart asserts that La.R.S. 3:4278.1 applies only to contractors while La.R.S. 3:4278.2 applies to co-owners. As a result, he argues that treble damages should not have been awarded against him.

La.R.S. 3:4278.1 provides, in pertinent part, that:

A. It shall be unlawful for *any person* to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.

B. *Whoever* willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney's fees.

C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware

8

that his actions were without the consent or direction of the owner or legal possessor of the trees.

(Emphasis added.)

La.R.S. 3:4278.2 provides as follows:

A. A co-owner or co-heir of land may execute an act of timber sale whereby he sells his undivided interest in the timber, and any condition imposing a time period within which to remove the timber shall commence from the date of its execution.

B. A buyer who purchases the timber from a co-owner or co-heir of land may not remove the timber without the consent of the co-owners or co-heirs representing at least eighty percent of the ownership interest in the land, provided that he has made reasonable effort to contact the co-owners or co-heirs who have not consented and, if contacted, has offered to contract with them on substantially the same basis that he has contracted with the other co-owners or co-heirs.

C. A co-owner or co-heir of the land who does not consent to the exercise of such rights has no liability for the cost of timber operations resulting from the sale of the timber, and shall receive from the buyer the same price which the buyer paid to the other co-owners or co-heirs. The consenting co-owners or co-heirs shall agree to indemnify and hold harmless the nonconsenting co-owners or co-heirs for any damage or injury claims which may result from such operations.

D. If the nonconsenting co-owner or co-heir fails or refuses to claim his portion of the sale price of the timber, the buyer shall be obligated to hold such funds in escrow, for and on behalf of such nonconsenting co-owner or co-heir and any interest or other income earned by such funds in escrow shall inure to the benefit of the co-owner or co-heir for whom they are held.

E. Failure to comply with the provisions of this Section shall constitute prima facie evidence of the intent to commit theft of the timber by such buyer.

F. The sale of an undivided interest in timber that constitutes community property shall be governed by the provisions of Chapter 2 of Title VI of Book III of the Civil Code.

Hart did not execute an act selling his undivided one-half interest in the timber co-owned with his sister. Rather, he passed himself off as sole owner in selling the timber. Moreover, the provisions of La.R.S. 3:4278.2 do not appear to exist in order to exempt a co-owner from the necessity of paying treble damages for timber trespass.

9

Rather, those provisions impose penalties on those buyers who cut timber without having obtained the consent of 80% of the co-owners. Further, we find nothing in La.R.S. 3:4278.1 which would prevent its being applied to a co-owner. "[A] co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it. . . ." La.Civ.Code art 802. However, "[t]he use and management of the thing held in indivision is determined by agreement of all the co-owners." La.Civ.Code art. 801.

It is a long established principle of Louisiana law that a co-owner "has no right to cut the timber on the land without the consent of his co-owner . . . for the act is in the nature of a trespass." *Cotten v. Christen*, 34 So. 597, 598, 110 La. 444, 447 (La. 1903).

The second circuit in *Morgan v. Fuller*, 441 So.2d 290, 296 (La.App. 2 Cir. 1983), *writs denied*, 443 So.2d 596 (La.1983), 443 So.2d 1599 (La.1983), discussed the legislature's intent in enacting La.R.S. 3:4278.1:

> Although somewhat inartfully drafted, the statute viewed in its entirety appears to manifest an intent by the legislature to impose a severe penalty [treble damages] upon those who flagrantly disregard the property rights of timber owners. See *Smith v. Myrick,* 412 So.2d 677 (La.App. 2d Cir.1982); *Garrett v. Martin Timber Company, Inc.,* 391 So.2d 928 (La.App. 2d Cir.1980).

This court in *Jordan v. Stevens Forestry Services, Inc.*, 430 So.2d 806, 809-10 (La.App. 3 Cir. 1983), discussed the circumstances in which treble damages will be imposed:

> Subsection C is principally aimed at tree pirates who cross clearly marked ownership lines and cut timber or remove timber. The punitive nature of this part penalizes a person's actions for their own pecuniary gain who otherwise would only pay a landowner or legal possessor the value of the trees taken. With Subsection C in force, such a trespasser is dissuaded from taking another's timber for his own gain because he will no longer break even when he is caught.

10

The evidence adduced at trial shows that Hart has consistently "flagrantly disregard[ed] the property rights of timber owners," that is, the timber rights of his sister. Further, he acted as a "tree pirate," acting in flagrant disregard of his sister's ownership rights, of which he was clearly aware, as evidenced by his testimony at trial. The evidence supports the conclusion that Hart not only willfully and intentionally sold timber which did not belong to him, but also had no intention of paying his sister for her share of the timber taken. The evidence at trial showed that Hart acted in disregard of his sister's ownership interests. He admitted that in 1994 a judgment was rendered against him which found that he had forged his sister's signature on an oil and gas lease and another document. David Poston, a real estate broker who acted as a business manager for Hart, testified that he had been trying since 1991 to get an agreement to cut timber from Prewitt's representatives, but that they had never given consent. He stated that Hart was aware permission was necessary because Hart asked him to seek permission from Prewitt's representatives. Further, the evidence presented to the judge at the trial on the offsets showed that Hart sold timber on property co-owned with his sister in 1991 or 1992 without providing for Prewitt to be paid for her share. That action resulted in an agreement allowing Prewitt to receive all the proceeds of cutting on certain other co-owned tracts. The evidence shows a pattern of behavior on the part of Hart which suggests that the mere requirement that he pay his sister her share would not dissuade him from taking his sister's timber for his own gain. Therefore, we conclude that the circumstances of this case justify the imposition of treble damages under La.R.S. 3:4278.1.

ANSWER TO APPEAL

11

In her answer to appeal, Prewitt asks for additional attorney's fees for work performed on appeal. We find such an award required under the circumstances and in light of La.R.S. 3:4278.1 and *McConnico v. Red Oak Timber Co.*, 36,985 (La.App. 2 Cir. 5/16/03), 847 So.2d 191. Having considered these proceedings, along with the Prewitt's brief filed with this court, we award an additional $2,500.00 in attorney's fees on appeal.

CONCLUSION

For these reasons, the judgment of the trial court is affirmed. We award additional attorney's fees on appeal in the amount of $2,500.00. Costs of appeal are assessed to the Defendant/Appellant, Max Hart, Jr.

AFFIRMED.