PEATROSS, J.
|-, The parties herein have been before this court twice regarding community property partition issues. In the instant matter, Mr. Sullivan sold timber off of a 120-acre tract of land that he and Ms. Sullivan co-owned (“the community tract”). Ms. Sullivan was unaware of the cutting and sale of the timber and did not share in the proceeds. This suit followed. The trial court found that Mr. Sullivan cut 254,354 board feet of timber from the community tract and valued the timber at $413.57 per thousand board feet (MBF) for a total of $105,193.18. Finding that Ms. Sullivan was owed one-half of that amount, or $52,596.59, the trial court then applied La. R.S. 3:4278.1[1], the “timber trespass” or “timber piracy” statute, and tripled |2this amount for a total damage award of $157,789.77. The court then awarded Ms. Sullivan attorney fees of 40 percent of the treble damage award, or $63,115.91. Mr. Sullivan appeals. For the reasons stated herein, we vacate the award of attorney fees, amend the damage award and, as amended, we affirm.

FACTS

During the marriage, the Sullivans purchased a 120-acre tract of wooded land in Claiborne Parish. After the Sullivans divorced, they retained the community tract in co-ownership and it was listed as an asset in the contested community property partition proceeding. The divorce judgment prohibited the parties from alienating or encumbering any community property. In addition, for reasons not relevant herein, the community was not partitioned *1123 at the time of the events giving rise to this suit. The record reflects that, following the divorce, Mr. Sullivan purchased a tract of land adjacent to the community tract where he resided (“separate tract”).
In 1994 and 1995, Mr. Sullivan cut and stacked timber on the community tract. It is undisputed that, in February 1994, Mr. Sullivan contracted with Eddie Harmon of Harmon Wood Company, Inc. (“Harmon Wood”) to purchase the timber cut from the property and to haul the timber to the Willamette mill. Mr. Sullivan maintains that the first timber sold to Harmon Wood was cut from his separate tract; however, the record reflects 13that Mr. Harmon was unaware that he was purchasing timber from separate tracts or that there were different or additional owners of the property. Mr. Sullivan further maintains that the timber had been damaged by the ice storm of February 9, 1994, and was already felled and damaged when he sold the timber to Harmon Wood. The mill tickets, however, show that the first load of Sullivan timber was delivered to the Willamette mill by Harmon Wood on February 8, 1994, the day before the ice storm. The record further reveals that there were very few culled logs, ie., damaged timber from the Sullivan property. As stated, the cutting and sale of timber by Mr. Sullivan continued into 1995.
The checks for the timber sold by Mr. Sullivan to Harmon Wood in 1994 were made payable to Mr. Sullivan’s girlfriend (now wife), Priscilla Wallace, allegedly for tax purposes. The checks to Ms. Wallace totaled $29,901. The checks from Harmon Wood for the timber harvested in 1995 were made payable to Mr. Sullivan and totaled $33,364. Accompanying the checks from Harmon Wood to Ms. Wallace and Mr. Sullivan are the scale or mill tickets reflecting, inter alia, the number of board feet sold. The total of all of the mill tickets in evidence, covering the time period from February 8, 1994, to March 1, 1995, is 214,354 board feet.
In early 1995, Ms. Sullivan became aware that the timber had been cut from the community tract. She contacted Mr. Harmon in March 1995 and advised him that the property was involved in litigation. Harmon Wood immediately ceased hauling timber from the Sullivan property. Mr. Harmon testified in deposition that Mr. Sullivan then advised him that there was |4stacked timber remaining on the property which had not yet been hauled to the mill. Mr. Harmon refused, however, to remove any additional timber from the Sullivan property.
Ms. Sullivan filed this suit in December 1995, naming as defendants Harmon Wood, Mr. Harmon, individually, Priscilla Wallace and Bruce Sullivan. Harmon Wood filed a cross-claim against Mr. Sullivan. At the time suit was filed, the community property partition was pending under another docket number. Mr. Sullivan filed an Exception of No Right of Action and Alternative Motion for Summary Judgment in the current action arguing that Ms. Sullivan’s claims must be asserted in the partition action and not brought as a separate action. The trial court denied the exception and the case was ultimately tried some four years later, on May 22 and 23, 2006. In the meantime, Ms. Sullivan and Mr. Harmon, individually, and Harmon Wood reached a settlement and those defendants were dismissed from the suit.
The matter proceeded to trial against Mr. Sullivan and Ms. Wallace; and, ultimately, the court ruled in favor of Ms. Wallace, dismissing her from the suit. As previously stated, the court ruled against Mr. Sullivan, finding that 254,354 board feet of timber was harvested from the community tract. This figure represents the 214,354 board feet reflected on the mill *1124 tickets and an additional 40,000 board feet that was felled, but not hauled to the mill. The court then concluded that the market value of the timber as pine saw logs at the time of the harvesting was $413.57/MBF, or $105,198.18. Ms. Sullivan, therefore, was entitled to one-half of that amount, or | b$52,596.59. Applying La. R.S. 3:4278.1, the trial court then tripled that amount resulting in an award of $157,789.77. In addition, also under the timber trespass statute, the trial court awarded attorney fees in the amount of 40 percent of the treble damage award, or $63,115.91, resulting in a total judgment in favor of Ms. Sullivan of $220,805.88. This appeal ensued.

DISCUSSION

On appeal, Mr. Sullivan challenges the trial court’s denial of his Exception of No Right of Action and Motion for Summary Judgment. Alternatively, he argues that the factual findings of the trial court regarding the number of board feet cut and the market price of the timber were manifestly erroneous and further urges that the timber trespass statute does not apply to co-owners of property under Alexander v. Dunn, 44,272 (La.App.2d Cir.6/3/09), 15 So.3d 302, writ denied, 09-1487 (La.10/2/09), 18 So.3d 122.

Exception of No Right of Action and Motion for Summary Judgment

As a threshold issue, we first address the denial of Mr. Sullivan’s Exception of No Right of Action and Motion for Summary Judgment. The trial court recognized the nature of the current action to be in tort and we note that the petition also contained actions for trespass, negligence and conversion. We find no error in the trial court’s decision to allow these claims to proceed separate from the partition action. See, e.g., Schulingkamp v. Schulingkamp, 96-2680 (La.App. 1st Cir.12/29/97), 706 So.2d 1005, writ denied, 98-0279 (La.3/20/98), 715 So.2d 1219.
| /¡Factual Findings of the Trial Court
We now review the factual findings of the trial court regarding the amount of timber sold to Harmon Wood by Mr. Sullivan and the market value of the timber for purposes of computing the damage award.
The standard of review to be applied to factual findings in a civil matter is the manifest error standard. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Under this standard, the reviewing court does not substitute its own judgment for that of the fact finder, but determines whether its findings were reasonable. Hubbard v. Allied Building Stores, Inc., 41,534 (La.App.2d Cir.11/1/06), 942 So.2d 639. Thus, where there are two permissible outcomes, neither choice can ever be manifestly erroneous. Id. The court of appeal, therefore, may not reverse the decision if the fact finder’s conclusions are reasonable in light of the record, even if the appellate court would have reached the opposite conclusion as fact finder. Id.

Number of Board Feet of Timber

Mr. Sullivan first challenges the factual determination of the trial judge pertaining to the number of board feet of timber cut and sold from the community tract. He argues that the conclusion that 254,354 board feet of timber was harvested from the community tract is inflated because the timber cut in 1994 was from his separate tract, not the community tract. Mr. Sullivan argues that it was manifestly erroneous for the judge to accept the total number of board feet from the mill tickets in light of his testimony about that the timber cut by him in 1994 was from his separate tract. 17Mr. Sullivan further argues that it was clearly wrong for the trial judge to add 40,000 board feet to the total board footage from the mill tickets.
*1125 We find ample evidence in the record to support the finding of the trial judge that the total board footage cut from the Sullivan property was 254,354. First, the trial judge did not find credible the testimony of Mr. Sullivan that all of the timber cut in 1994 was from his separate tract and, further, was damaged timber from the ice storm. Specifically, the trial judge noted that the first mill ticket was dated before the ice storm occurred and the mill tickets taken together show very little damaged timber. We -will not disturb this credibility call made by the trial judge. We find it to be entirely reasonable, therefore, to accept the total of the mill tickets as the starting point for a total board footage figure. We also find that the testimony of Mr. Harmon and others provides support for the trial judge’s addition of 40,000 board feet to the total footage from the mill tickets. Mr. Harmon testified that Mr. Sullivan advised him, after Mr. Harmon ceased removing timber from the property, that there was some timber felled and stacked that was yet to be hauled to the mill. This timber must be quantified and added to the total from the mill tickets. In order to quantify the remaining timber, the trial judge engaged in a thorough review and analysis of the testimony of several foresters who testified on behalf of both parties. Ultimately, the court relied upon the deposition testimony of Stephen E. Muslow, a forester testifying on behalf of Mr. Sullivan and Ms. Wallace. Mr. Muslow explained that the pulpwood differential between a cruise of the property in 1991 and a subsequent cruise of the | ^property by him was 567 cords of pulpwood. According to Mr. Muslow, these 567 cords of pulpwood would have been 40,000 board feet of timber. The trial judge found this testimony persuasive and we find no manifest error in that conclusion.

Market Value of Timber

Mr. Sullivan further challenges the trial judge’s determination of market value of the timber. Ms. Sullivan asserts, however, that there is ample evidence in the record to support the fair market value determination of the trial judge. She points out that the figure of $413.57/MBF was based on previous sales by Mr. Sullivan and was well below the estimate of fair stumpage value provided by two testifying foresters. We agree with Ms. Sullivan that the figure of $413.57/MBF has a rational basis in this record and that the trial judge was not manifestly erroneous in accepting this figure as the fair market value. Specifically, we note that there are variances in suggested market values ranging from as little as $300/MBF to more than $500/MBF. The amount Harmon Wood paid for the timber was $300/ MBF and $340/MBF. As the trial judge noted, two foresters testified that the average stumpage price paid in the area at that time was actually $500/MBF. Moreover, in April 1995, Mr. Sullivan sold timber from other property in the same area for $413.57/MBF. Based on this evidence, we find no manifest error in the trial court’s adopting the price paid to Mr. Sullivan in April 1995 as the fair market value of the timber.
In summary, we find a rational basis in the record to support the calculations of the trial judge regarding the value of the lost timber volume |9to be $105,193.18. Of that amount, Ms. Sullivan would be entitled to half, or $52,596.59.

Applicability of La. R.S. 3:4278, et seq.

Mr. Sullivan argues that this court has previously held that La. R.S. 3:4278, et seq., the tree piracy or trespass statute, does not apply to co-owners. Alexander v. Dunn, supra. The statute provides that it is unlawful to cut and remove timber without the consent of the “owner or legal *1126 possessor.” In Alexander v. Dunn, Dunn was a widower who owned one-half of the community property and the children of his deceased wife owned the other half of the property. Dunn sold the timber without the permission of the five children, who then filed suit against Dunn. This court expressly held that the “trespass” statute did not apply to co-owners, concluding that the co-ownership articles of the civil code provide adequate recourse among co-owners of property. We adhere, therefore, to our previous decision in Alexander v. Dunn, for the reasons set forth therein. We find, therefore, that the trial court erroneously applied the statute to the case sub judice and erroneously awarded treble damages and attorney fees under that statute.

CONCLUSION

For the foregoing reasons, the award of damages in favor of Janice Sullivan is amended by reducing the award to $52,596.59, which is one-half of the value of the lost timber in accordance with the trial court’s calculations. The portion of the judgment awarding attorney fees is vacated. Costs are assessed equally to the parties.
AMENDED IN PART, VACATED IN PART, AND, AS AMENDED, AFFIRMED.
BROWN, C.J., dissents with written reasons.

. 4278.1. Trees, cutting without consent; penalty
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney’s fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
E. The provisions of this Section shall not apply to the clearing and maintenance of rights of way or to utility service situations where a utility is acting in good faith to minimize the damage or harm occasioned by an act of God. The provisions of this Section shall not apply to land surveying by or under the direction of a registered professional land surveyor, duly registered under the laws of the state of Louisiana.
F. Whoever violates the provisions of Subsection A as they relate to the cutting of standing cypress trees on water bottoms owned by the state of Louisiana shall, in addition to the penalties otherwise provided in this Section, be subject to a fine not to exceed five thousand dollars, imprisonment not to exceed six months, or both.