51 So.3d 702 (2010)
Janice SULLIVAN
v.
Priscilla WALLACE, et al.
No. 2010-C-0388.
Supreme Court of Louisiana.
November 30, 2010.
*703 Jones & Hill, LLC, John Craig Jones, Oakdale, for Applicant.
McMichael, Medlin, D'Anna, Wedgeworth & LaFargue, James C. McMichael, Jr., Shreveport, for Respondent.
GUIDRY, Justice.[*]
We granted the plaintiff's writ application to resolve a split in the circuits. The legal issue presented is whether a co-owner of timberland can be liable to his fellow co-owners for treble damages under La. Rev.Stat. 3:4278.1 when he cuts and sells the timber without the co-owners' consent. For the reasons set forth below, we conclude the punitive "timber trespass" statute is inapplicable against co-owners. Accordingly, we affirm the appellate court's judgment.

FACTS and PROCEDURAL HISTORY
The facts in this case are not in dispute. During their marriage, the defendant, Bruce Sullivan, and the plaintiff, Janice Sullivan, purchased a 120-acre tract of land in Claiborne Parish. The couple divorced in 1990 in Ouachita Parish, but they retained the community tract in co-ownership and listed it as an asset in the community property partition proceeding. The *704 divorce judgment prohibited the parties from alienating or encumbering any community property.
In 1994 and 1995, the defendant cut and stacked timber on the community tract. In February 1994, he arranged for Eddie Harmon of Harmon Wood Company, Inc. (hereinafter, "Harmon Wood"), to purchase the cut timber and to haul it to the Willamette mill. The cutting and sale of timber continued into 1995. The checks for the timber sold to Harmon Wood in 1994 were made payable to Priscilla Wallace, the defendant's girlfriend at the time (now wife). The checks for the timber sold in 1995 were made payable to the defendant. The number of board feet sold in this manner totaled 214,354 board feet.
In 1995, the plaintiff became aware that timber had been cut from the community tract. She advised Harmon Wood that the property was in litigation, and Harmon Wood immediately ceased removing timber from the property. When the defendant informed Harmon Wood there remained a quantity of cut and stacked timber, later determined to be 40,000 board feet, Harmon Wood refused to remove any additional timber.
The plaintiff filed suit against Harmon, Harmon Wood, Wallace, and the defendant, asserting claims of trespass, negligence, and conversion, and seeking treble damages and attorney fees under La.Rev. Stat. 3:4278.1 and 3:4278.2. Because the community property partition was proceeding under a different docket number, the defendant filed an exception of no right of action, arguing the plaintiff's claims must be asserted in the partition proceeding. The exception was overruled, and the case proceeded to trial against the defendant and Wallace.[1]
The trial court ruled in favor of the plaintiff, finding that a total of 254,354 board feet of timber had been harvested from the community tract (the total of the timber removed by Harmon Wood and that which was felled and stacked on the property). At $413.57 per thousand board feet, the plaintiff's one-half share of the value of the timber was placed at $52,596.59. At trial, the defendant asserted the timber in 1994 had come from his separately-owned but adjoining tract and that he was acting as a prudent administrator of the timber on the community tract because the timber had been damaged in an ice storm and needed to be cut. The trial court did not find credible the defendant's testimony that the timber cut during 1994 had come from his own tract or that the timber had been damaged during an ice storm. With regard to the latter, the trial court noted the first mill receipt from Harmon Wood had pre-dated the ice storm and the mill receipts themselves indicated there was little damage. Finally, the trial court applied La.Rev. *705 Stat. 3:4278.1 to award treble damages, or $157,789.77, and to award attorney fees in the amount of 40% percent of the treble damage award, or $63,115.91.[2]
The court of appeal affirmed in part, but in a split decision reversed as to the treble damages and attorney fees. Sullivan v. Wallace, 44,853 (La.App. 2 Cir. 1/20/10), 27 So.3d 1120. The court agreed with the defendant that the timber trespass statute does not apply to co-owners of property, citing Alexander v. Dunn, 44,272 (La. App.2d Cir.6/3/09), 15 So.3d 302, writ denied, 09-1487 (La.10/2/09), 18 So.3d 122. Adhering to its view expressed in Alexander v. Dunn that the "timber trespass" statute does not apply to co-owners of immovable property and that the co-ownership articles of the Civil Code provide adequate recourse among co-owners of immovable property, the appellate court found the trial court had erroneously applied the statute to the case sub judice and erroneously awarded treble damages and attorney fees under that statute. The appellate court then reduced the plaintiff's award to $52,596.59, representing one-half of the value of the lost timber in accordance with the trial court's calculations, and vacated that portion of the judgment awarding attorney fees.
The dissenting judge would have affirmed the trial court's award of treble damages and attorney fees. He distinguished the instant case from Alexander v. Dunn on the facts. The judge reasoned that the defendant here, in addition to being a co-owner, is also a timber contractor, making him subject to the provisions of La.Rev.Stat. 3:4278.2. In McConnico v. Red Oak, 36,985 (La.App. 2 Cir. 5/16/03), 847 So.2d 191, the court had applied La. Rev.Stat. 3:4278.2 to hold a buyer of pirated timber liable for treble damages based "on the strong public policy reflected in La. R.S. 3:4278.2 which describes [the] failure to identify and consult all co-owners as presumptive timber theft."[3] In this case, the dissent pointed out, the defendant intentionally failed to consult all co-owners. Further, in Prewitt v. Rodrigues, 04-1195 (La.App. 3 Cir. 2/2/05), 893 So.2d 927, the Third Circuit affirmed an award of treble damages and attorney's fees against a brother who had wilfully sold timber co-owned with his sister with no intention of paying her her share. Noting that Prewitt directly conflicts with Alexander, the dissenting judge reasoned that because defendant here cut and sold timber he knew was 50% owned by his former wife, with no intention of paying her share to her, he should be subject to treble damages and attorney fees.
We granted the plaintiff's writ application to resolve the split in the circuits. Sullivan v. Wallace, 10-0388 (La.5/28/10), 36 So.3d 258. Agreeing with the reasoning espoused in Alexander v. Dunn, we find the "timber trespass" statute, La.Rev. Stat. 3:4278.1, does not apply to a co-owner of timberland who cuts and then sells the timber from a tract he owns in indivision *706 with another co-owner without the co-owner's consent.

LAW and DISCUSSION
The issue in this case is a legal one requiring us to interpret La.Rev.Stat. 3:4278.1. The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. Pumphrey v. City of New Orleans, 05-0979, pp. 10-12 (La.4/4/06), 925 So.2d 1202, 1209-10; In re Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128; see also La.Rev.Stat. 1:4; La. Civ.Code art. 2; Lockett v. State, Dept. of Transp. and Development, 03-1767, p. 3 (La.2/25/04), 869 So.2d 87, 90. As this court has oft-stated, "the starting point in the interpretation of any statute is the language of the statute itself." Cats' Meow, Inc. v. City of New Orleans, 98-0601, p. 15, (La. 10/20/98), 720 So.2d 1186, 1198; Smith v. Flournoy, 238 La. 432, 115 So.2d 809, 814 (1959). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation need be made in search of the intent of the legislature. La. Civ.Code art. 9; Lockett, 03-1767 at p. 3, 869 So.2d at 90-91; Conerly v. State, 97-0871, p. 3-4 (La.7/8/98), 714 So.2d 709, 710-11. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. La. Civ.Code arts. 10 and 11; Lockett, 03-1767 at p. 4, 869 So.2d at 91; Ruiz v. Oniate, 97-2412, p. 4 (La.5/19/98), 713 So.2d 442, 444. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La.Rev.Stat. 1:3; La. Civ. Code. arts. 12 and 13; Lockett, 03-1767 at p. 4, 869 So.2d at 91. La. Civ.Code art. 13 provides that, where two statutes deal with the same subject matter, they should be harmonized if possible. Kennedy v. Kennedy, 96-0732, 96-0741, p. 2 (La. 11/25/96), 699 So.2d 351, 358 (on rehearing).

The Timber Statutes
La.Rev.Stat. 3:4278.1, first adopted by La. Acts 1974, No. 692, is commonly referred to as the "timber trespass" or "timber piracy" statute, and provides in pertinent part:
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
*707 La.Rev.Stat. 3:4278.2, which was enacted in 1992 by Acts 1992, No. 223, is often referred to as the "80% rule," and it provides as follows:
A. A co-owner or co-heir of land may execute an act of timber sale whereby he sells his undivided interest in the timber, and any condition imposing a time period within which to remove the timber shall commence from the date of its execution.
B. A buyer who purchases the timber from a co-owner or co-heir of land may not remove the timber without the consent of the co-owners or co-heirs representing at least eighty percent of the ownership interest in the land, provided that he has made reasonable effort to contact the co-owners or co-heirs who have not consented and, if contacted, has offered to contract with them on substantially the same basis that he has contracted with the other co-owners or co-heirs.
C. A co-owner or co-heir of the land who does not consent to the exercise of such rights has no liability for the cost of timber operations resulting from the sale of the timber, and shall receive from the buyer the same price which the buyer paid to the other co-owners or co-heirs. The consenting co-owners or co-heirs shall agree to indemnify and hold harmless the nonconsenting co-owners or co-heirs for any damage or injury claims which may result from such operations.
D. If the nonconsenting co-owner or co-heir fails or refuses to claim his portion of the sale price of the timber, the buyer shall be obligated to hold such funds in escrow, for and on behalf of such nonconsenting co-owner or co-heir and any interest or other income earned by such funds in escrow shall inure to the benefit of the co-owner or co-heir for whom they are held.
E. Failure to comply with the provisions of this Section shall constitute prima facie evidence of the intent to commit theft of the timber by such buyer.
F. The sale of an undivided interest in timber that constitutes community property shall be governed by the provisions of Chapter 2 of Title VI of Book III of the Civil Code.

Analysis
The question before us is whether a co-owner of immovable property or timberland falls within the scope of La.Rev. Stat. 3:4278.1, which prohibits "any person" from cutting, felling, destroying, removing, or diverting for sale or use, tree, growing or lying "on the land of another," without the consent of "the owner or legal possessor." As we have explained, La. Rev.Stat. 3:4278.1, because it allows the imposition of treble damages and attorney fees, is clearly a punitive statute and, therefore, must be strictly construed. Hornsby v. Bayou Jack Logging, Inc., 04-1297 (La.5/6/05), 902 So.2d 361. In Hornsby, we found that La.Rev.Stat. 3:4278.1, formerly La.Rev.Stat. 56:1478.1, was enacted by the legislature to impose a penalty upon those who disregard the property rights of timber owners. Id., p. 12, 902 So.2d at 369. In determining whether a logger, who crossed property lines and felled trees without consent of the landowner, can be liable for penalties under La.Rev.Stat. 3:4278.1, we found no ambiguity in La.Rev.Stat. 3:4278.1. Under the plain language of the statute, a person who is found to have unlawfully cut and removed trees belonging to another without consent is liable to the owner for three times the fair market value of the timber taken. Id.
*708 However, the instant case presents, not whether La.Rev.Stat. 3:4278.1 applies to a third party trespasser acting in good faith, as in Hornsby, but whether the "timber trespass" statute and its penalties can apply to a co-owner of the property who cuts and removes trees without the consent of his co-owner, even if he is acting in bad faith vis-a-vis his co-owner. Two courts have now answered this question differently.
In Alexander v. Dunn, relied on by the court below, the defendant owned one-half of the community property and his deceased wife's five children owned the other half. The defendant sold the timber, because he claimed the timber had been planted too close together and he desired to thin it out. The co-owner children sued, citing La.Rev.Stat. 3:4278.1 and seeking treble damages and attorney fees for the wrongful cutting of the timber. The defendant reconvened seeking one-half the cost of taxes paid and the costs of reforestation and overseeing the property. The trial court ruled in favor of the co-owner children and awarded both treble damages and attorney fees. On appeal, the Second Circuit, as discussed more fully below, ruled that the "timber theft" statute did not apply to co-owners; instead, the co-ownership articles of the Civil Code applied. The appellate court reversed the award of treble damages and attorney fees, and amended the judgment to award only the fair market value of the share of the timber attributable to the co-owner children.
In Prewitt, a Third Circuit decision, a brother authorized the cutting of timber from land co-owned with his sister. In holding the brother liable for treble damages and attorney fees pursuant to La. Rev.Stat. 3:4278.1, the court observed that a co-owner has no right to cut timber without the consent of his or her co-owner, the offense being in the nature of a trespass, and that, while inartfully drafted, there is nothing in the language of La.Rev. Stat. 3:4278.1 that would prevent its application to a co-owner. The Third Circuit reasoned that the purpose of the statute is to impose a severe penalty on those who flagrantly disregard the rights of timber owners, and there is no reason to exempt a co-owner from this penalty when his or her conduct fits squarely within the parameters of the prohibited conduct.
The plaintiff argues that La.Rev.Stat. 3:4278.1 applies to "any person" who cuts timber on the "land of another," and co-owned land is, by definition, land owned by one co-owner with "another." Because it is both the land of the co-owner and that of another, the plaintiff argues the Second Circuit erred in interpreting the "land of another" to mean land in which no ownership interest is held. She argues that the purpose of both La. Rev. Stats. 3:4278.1 and 3:4278.2 is to deter "timber piracy" and to punish unscrupulous timber contractors from taking advantage of the rules of co-ownership and pirating timber from innocent landowners, as well as give majority landowners the ability to sell their timber interests when a minority of co-owners unreasonably objected, citing Allain v. Martco Partnership, 02-1796, p. 10 (La.5/23/03), 851 So.2d 974, 984. In plaintiff's view, the Third Circuit in Prewitt properly interpreted the statute in light of its intended purpose. The plaintiff, supported by the amicus Louisiana Forestry Association, posits that the Second Circuit's ruling provides a loophole around the 80% rule of La.Rev.Stat. 3:4278.2 to allow unscrupulous contractors to purchase interests in the property and therefore avoid the penalties of La.Rev.Stat. 3:4278.1.
The defendant agrees, of course, with the Second Circuit's view in both the instant *709 case and in Alexander v. Dunn. He argues that, under strict interpretation, the statute plainly prohibits actions with respect to trees growing or lying "on the land of another" when the actions are taken without "the consent of the owner." Further, he asserts that, while the language of La.Rev.Stat. 3:4278.1 does not specifically exclude or include co-owners, the legislature's purpose in passing the timber trespass statute was to punish third parties who enter the lands of others and harvest trees without the consent of the owner. The defendant counters that a timber contractor who purchases land and timber from a co-owner and then removes the timber without permission from at least 80% of the co-owners will remain subject to the provisions of La.Rev.Stat. 3:4278.2, because a factfinder can make a distinction between a true co-owner prior to the timber transaction and timber contractor who purchases an interest in land to facilitate the theft of trees.
We agree with the court of appeal in Alexander v. Dunn that, although the statute is directed to "any person" who cuts, fells, destroys, removes, or diverts for sale or use any trees, the statute is facially ambiguous with regard to co-owners of the timberland, neither expressly including nor excluding these persons from its provisions. When viewed strictly, the statute is violated only when "any person" acts with respect to trees growing or lying "on the land of another" and when this action is taken without "the consent of ... the owner or legal possessor." In addition, the timber trespasser owes the penalty to "the owner or legal possessor of the trees," a phrase that, as the Second Circuit so reasoned, more logically describes a person other than the wrongdoer as described in the statute. Furthermore, La.Rev.Stat. 3:4278.1 is found within Title 3 of the Revised Statutes entitled "Agriculture and Forestry," Chapter 28, entitled "Forests and Forestry," and Part 1 thereof, entitled "Protection and Reforestation." Section 4278.1 is entitled "Trees, cutting without consent; penalty." Given this context, the legislative purpose behind La.Rev.Stat. 3:4278.1 is to protect those with interests in trees from loggers who enter their property without permission to harvest timber illegally. See Hornsby v. Bayou Jack Logging, 902 So.2d at 371, Weimer, J., concurring. Thus, with the proper construction in mind, the focus of the statute is on an actor other than an owner.
That La.Rev.Stat. 3:4278.1 is not directed to co-owners of timberlands who act without the permission of their co-owners is further supported when we examine it in context with La.Rev.Stat. 3:4278.2 and the legislative purpose thereof. La.Rev.Stat. 3:4278.2, the 80% rule, allows a timber buyer to cut standing timber when the buyer has the consent of co-owners holding 80% or more of the ownership interest.[4] As the Second Circuit in Alexander v. Dunn reasoned, if La.Rev. Stat. 3:4278.1 applies to co-owners, then one co-owner who holds more than 80% of the ownership interest and permits timber to be cut in accordance with La.Rev.Stat. 3:4278.2 would nevertheless be liable to the other co-owners for treble damages under *710 La.Rev.Stat. 3:4278.1 even though the timber "buyer" would escape the penalty because of La.Rev.Stat. 3:4278.2(B). As the Second Circuit reasoned, such a contradiction cannot be what the legislature intended in enacting these statutes. Furthermore, the legislature surely was aware of the Civil Code's articles found in Title VII, Book II, governing ownership in indivision, which recognize the underlying principle that a co-owner would ordinarily act in his own economic self-interest with respect to his property. Any other interpretation of La.Rev.Stat. 3:4278.1 would violate the principle holding that penal statutes must be strictly construed.[5]
We also reject the argument that the defendant here falls under the rubric of a "timber contractor" and thus is subject to the 80% rule in La.Rev.Stat. 3:4278.2. The facts of this case demonstrate the defendant cut and then sold the timber to a "buyer," Harmon Wood. As La.Rev.Stat.3:4278.2 is itself a penal statute, it also must be strictly construed. The legislature intentionally provided that a co-owner may sell his undivided interest in timber, La.Rev.Stat.3:4278.2 (A); however, the legislature then intended to require that the "buyer" of timber from a person who co-owns timber in indivision obtain the consent of at least 80% of the co-owners before he may cut trees on the property owned in indivision, lest he be subject to the treble damages and attorney fees. La.Rev.Stat.3:4278.2(B). Here, despite the arguments made by the plaintiff, whether the defendant is a "timber contractor" is of no moment, because he was not the "buyer" of the timber interest within the meaning of La.Rev.Stat. 3:4278.2(B). Indeed, he was a co-owner of the timberland who cut the timber, and then sold the timber to a third party; therefore, the 80% rule cannot be applied to the defendant under these circumstances as co-owner or seller.[6]

CONCLUSION
For the reasons set forth above, we find that a co-owner of immovable property may not be held liable to his fellow co-owners under La.Rev.Stat. 3:4278.1 when he cuts and sells timber without his co-owners' consent. We thus conclude the punitive "timber trespass" statute is inapplicable against co-owners of immovable property.[7] Accordingly, we affirm the appellate court's judgment.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.
KNOLL, Justice, dissenting.
The majority concludes a co-owner of timberland cannot be liable to his fellow co-owners for treble damages under La. Rev.Stat. 3:4278.1 when he cuts and sells timber without his co-owner's consent. Finding this conclusion neither comports with the clear and unambiguous language of the punitive "timber piracy" provision nor furthers the explicit intent of the Legislature *711 in its enactment, I respectfully dissent for the following reasons.
As the majority correctly stated, La. R.S. 3:4278.1 renders unlawful the cutting or selling by any person of trees growing on the land of another without the consent of the owner and contains hefty penalties for any, who engage in such trespass:
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
Contrary to the majority's holding, however, nothing in the provision prevents its application to a co-owner nor restricts its application to third parties. Rather, the majority's third-party restriction will be a jurisprudentially-created requirement of the statute, which far exceeds our function as interpreters of the law as written.
A proper interpretation of the provision demonstrates that, by its plain language, any person who intentionally or willfully cuts any tree growing on the land of another without the owner's consent shall be liable to the owner for treble damages, and co-owned land is, by definition, land owned by one co-owner with another. It logically follows, therefore, because co-owned land is both the land of the co-owner and that of another, a co-owner"any person"is liable in triplicate for his bad faith if he cuts any trees growing on the land owned in indivision"land of another"without the consent of his co-owners"the owner." Significantly, unlike the majority's position, this interpretation comports with long-established jurisprudence from this Court holding a co-owner "has no right to cut the timber on the land without the consent of his co-owner ... for the act is in the nature of a trespass." Cotten v. Christen, 110 La. 444, 447, 34 So. 597, 598 (1903).[1]
More importantly, our Legislature's clear intent in using broad language in its enactment of these provisions was to combat and deter timber piracy, which discourages reforestation and other good forest management practices. In furtherance of this objective, the Legislature intentiontionally *712 drafted the provisions of La. R.S. 3:4278.1 broadly to extend to "any person," who cuts or removes trees without the consent of the owner. No one disputes tree piracy is a serious concern in this State in which remote tracts of timberland and absentee co-owners abound, and in accordance with the Legislature's intent, this statute has operated as a protection for said landowners and as a clear deterrent due to its severe penalties. The majority opinion, however, seriously erodes the protections provided by the statute by exempting co-owners, who willfully and intentionally engage in timber piracy, from the severe penalties. In reality, the majority's opinion actually endangers Louisiana's forests by discouraging reforestation as landowners will be reluctant to reforest trees, knowing their valuable forests are exposed to an increased risk of piracy from their very own co-owners. Even more alarming is its promotion of what can only be described as a "catch me if you can" policy, which would allow a timber pirate, owning as little as a one percent undivided interest, to cut co-owned timber and, if caught, only pay the pro rata share owned by his co-owners. Consequently, the majority essentially thwarts the noble intent of the Legislature to preserve our valuable timber resources by insulating from a substantial and deterring penalty any person, who flagrantly disregards the property rights of their timber co-owners.
Mr. Sullivan unquestionably is one such co-owner, who flagrantly disregarded his co-owner's property rights. As the evidence adduced at trial shows, Mr. Sullivan was not acting in good faith when he arranged to cut, stack, and sell the timber from the community property. Not only did he have record notice he was not to sell the immovable property by virtue of lis pendens notices filed in Claiborne Parish, he had actual notice from the divorce judgment that he was enjoined from alienating any of the community property. Moreover, any contention the harvesting was a salvage operation necessitated by ice storms that damaged the area was properly negated by evidence the first timber was delivered to the mill before the ice storm occurred, checks were issued to Mr. Sullivan's girlfriend, and mill tickets showed the timber was not damaged. This evidence supports the conclusion Mr. Sullivan not only willfully and intentionally sold timber, which did not belong to him, but also had no intention of paying his former wife and co-owner in indivision for her share of the timber he took. Unquestionably, he acted in blatant disregard of his former wife's ownership interest for his own gain. His conduct, therefore, constitutes the very activity the Legislature sought to curtail through the enactment of its punitive "timber piracy" provisions, and it simply defies logic and the explicit intent of the Legislature to find those provisions inapplicable to the situation herein.
Significantly, the Legislature created this specific statute to govern timber piracy, and it is well established specific provisions prevail over more general provisions. Kennedy v. Kennedy, 699 So.2d 351 (La.1996)(holding statute "specifically directed to timberland ... must be treated as an exception to the general [codal] rules"). It further follows that, given the clear applicability of these special provisions governing timber piracy and the rights of timber owners, the majority's reliance on the general provisions of our Civil Code governing ownership in indivision is misplaced. In accord with our civilian tradition, those provisions only apply in default in absence of special provisions specifically direct to the issue at hand. In this case, the penalty for Mr. Sullivan's timber piracy is governed by the specific *713 punitive provisions contained in La. R.S. 3:4278.1, and not our general codal provisions.
Accordingly, I find under the clear and unambiguous provisions of La. R.S. 3:4278.1(A) and (B), Mrs. Sullivan was entitled to treble damages and attorney's fees for Mr. Sullivan's nefarious pirating of her timber.
NOTES
[*] Retired Judge Philip C. Ciaccio, appointed Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
[1] Harmon was dismissed in his individual capacity pursuant to summary judgment, affirmed on appeal. See Sullivan v. Wallace, 33,387 (La.App. 2 Cir. 8/23/00), 766 So.2d 654, writ denied 00-2647 (La. 11/17/00), 774 So.2d 978. However, with respect to Harmon Wood, the court of appeal reversed the partial summary judgment, which had dismissed the plaintiff's claims against Harmon Wood for trespass, negligence and treble damages. Id. The court of appeal found that Harmon Wood, while not liable under La.Rev. Stat. 3:4278.2, because it had not purchased the defendant's timber interest, could be liable under La.Rev.Stat. 3:4278.1 for cutting and removing timber without the consent of the plaintiff. Id. at 660-61. The appellate court rejected Harmon Wood's argument that the defendant's consent was sufficient, finding that "the most reasonable interpretation of Section 4278.1 requires a person to obtain the consent of all owners prior to removing trees from the land." 766 So.2d at 660. Harmon Wood eventually settled with the plaintiff prior to trial on the merits.
[2] The trial court ruled in favor of Wallace, dismissing her from the suit with prejudice. The trial court had previously found Wallace not subject to treble damages under La.Rev. Stat. 3:4278.1. See Sullivan v. Wallace, 37,399 (La.App. 2 Cir. 10/20/03), 859 So.2d 245.
[3] In McConnico v. Red Oak, 36,985 (La.App.2 Cir.05/16/03), 847 So.2d 191, the court, applying La.Rev.Stat. 3:4278.2 (the 80% rule discussed infra), held that the buyer, Red Oak, of the timber from a co-owner who only owned one half was liable for treble damages to the other co-owner. The court stated that its "opinion relies heavily on the strong public policy reflected in La. R.S. 3:4278.2 which describes Red Oak's failure to identify and consult all co-owners as presumptive timber theft." 847 So.2d at 195 n. 2.
[4] As we explained in Allain, La.Rev.Stat. 3:4278.2 is intended to authorize the sale of an undivided interest of timber with the consent of 80% of ownership interest in the land. The law protects the profits of the remaining 20% co-owners not participating in the sale by placing their profits into an escrow account. The law's purpose is to manage forest resources and not penalize 80% when 20% could not be located or for some reason refused to cut any timber. The legislature determined that timber is a renewable resource, and proper harvesting of timber and good land management would benefit Louisiana's economy and wildlife habitat. 851 So.2d at 980.
[5] To the extent that Prewitt v. Rodrigues, 2004-1195 (La.App. 3rd Cir.2/2/05), 893 So.2d 927, is in conflict with our ruling today, it is overruled.
[6] As the Second Circuit reasoned, because neither La.Rev.Stat. 3:4278.1 nor La.Rev.Stat. 3:4278.2 governs the rights and duties of co-owners of timberlands vis-à-vis each other, the ordinary rules of the Civil Code apply.
[7] We recognize the important policy considerations invoked by the Louisiana Forestry Association in its amicus curiae brief filed in support of the plaintiff. However, our decision today is directed by the statutory construction required of a statute that is penal in nature. Any change in the law must be made by the legislature.
[1] Further credence for my position is found in La. R.S. 3:4278.2's explicit reference and application to "co-owners." See Allain v. Martco Partnership, 02-1796 (La.5/23/03), 851 So.2d 974. Moreover, I ardently agree with the Third Circuit's statement "the provisions of La. R.S. 3:4278.2 does not appear to exist in order to exempt a co-owner from the necessity of paying treble damages for timber trespass. Rather, those provisions [by their clear and unambiguous language] impose penalties on those buyers who cut timber without having obtained the consent of 80% of the co-owners." Prewitt v. Rodrigues, 04-1195, p. 10 (La.App. 3 Cir. 2/2/05), 893 So.2d 927, 934.