457 So.2d 1220 (1984)
John B. HOWES
v.
Elsas L. ROCQUIN.
No. 83 CA 1123.
Court of Appeal of Louisiana, First Circuit.
October 9, 1984.
*1221 Robert W. Troyer, Ponchatoula, for plaintiff-appellee.
Michael Tregle, Hammond, for defendant-appellant.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
Defendant, Elsas L. Rocquin, appeals a judgment awarding damages to plaintiff, John B. Howes, for the cutting, without permission, of timber located on plaintiff's property.
Rocquin owns a tract of land north of and adjacent to Howes' property in Tangipahoa Parish (see appended map). In approximately the first week of June 1976, Rocquin contracted with Mr. Cleveland Wells to clear by bulldozing some of Rocquin's land.
Rocquin testified that he told Wells to start clearing from the southeast corner of his property and then work back toward the highway. Rocquin stated that he showed Wells a survey stake at the southeast corner of the Rocquin property, told Wells that they would find the other stake to the west later, and then left. However, Wells cleared some of Howes' property and leveled the spoil bank on Howes' property at the canal.
The trial court awarded Howes $1,487.50 for the value of the timber taken from his land, $700.00 as costs for restoring the canal spoil bank and burying trash, and $2,500.00 for loss of aesthetic value, making a total award of $4,687.50. Costs were assessed against Rocquin.
Rocquin brought this appeal, alleging (1) that the trial court improperly assessed damages for the value of the timber involved, (2) that the trial court erred in awarding damages for loss of aesthetic value, and (3) that Howes failed to establish how much of the cleared land was his property.
As to the court's valuation of the timber cut from Howes' property, the controlling statute is LSA R.S. 56:1478.1, which provides:
Trees, cutting without consent; penalty
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only *1222 to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.
D. The provisions of this section shall not apply to the clearing and maintenance of rights of way or to utility service situations where a utility is acting in good faith to minimize the damage or harm occasioned by an act of God; the provisions of this Act shall not apply to land surveying by or under the direction of a registered professional land surveyor, duly registered under the laws of the State of Louisiana.
E. Whoever violates the provisions of Subsection A as they relate to the cutting of standing cypress trees on water bottoms owned by the state of Louisiana shall, in addition to the penalties otherwise provided in this Section, be subject to a fine not to exceed $5,000, imprisonment not to exceed six months or both.
This court previously construed this statute in Shaffett v. Vicks, 385 So.2d 419, 422 (La.App. 1st Cir.1980) as follows:
We believe that LSA-R.S. 56:1478.1(A)-(C) means, for our purposes, that damages are assessed against a person who cuts and removes timber from another person's land without the owner's permission. The penalty of damages is levied in all such situations. The amount of the penalty depends on the circumstances of the particular timber-cutting. If the timber-cutter "wilfully and intentionally" cuts and removes the timber, he is liable for damages in "the amount of three times the fair market value" of the timber. If the timber-cutter "in good faith" cuts and removes timber "across ownership lines, marked boundary lines, or outside of designated cutting area lines," he is liable for damages for "three times the fair market value" of the timber. If the timber-cutter "in good faith" cuts and removes timber across a property line which is not visibly designated as a demarcation line between two adjacent properties, he is only liable for the fair market value of the timber. He is not liable for triple damages. It should be kept in mind that as a punitive measure, this statute must be strictly construed; it is only when a person clearly violates its provisions that he will be assessed the severe penalty of triple damages.
Although not specifically articulated by the trial court judge, a careful review of the record reveals that Rocquin did not "wilfully and intentionally" cut timber on Howes' property; therefore, subsection B of the statute is not applicable. Rocquin, being in good faith, would be liable for treble damages under subsection C of the statute only if there had been a visibly designated demarcation line dividing the two properties. Shaffett, supra. The evidence in the record establishes that there was no visible demarcation line. Although there were at least two surveyor's stakes on the southern border of Rocquin's property, the testimony of both parties indicates that the only stake that was easily discernible was the one located on the southeast border of Rocquin's property. There was other testimony indicating the existence of an old fence or remnants of an old fence north of the canal; however, we do not think that Howes established that this fence remnant constituted a visible demarcation line. Howes felt it unnecessary to make any claim for damages for this fence, and, more importantly, Howes had to the south of the canal a functional fence in which he contained cattle. All these factors combined to create an absence of a dividing line between the properties; i.e., an experienced timber man could go from Howes' tract to Rocquin's tract without a noticeable difference, unless he happened to see a surveyor's stake. See Shaffett, supra.
Accordingly, we find that Rocquin is not liable for treble damages under LSA R.S. 56:1478.1, but is liable only for the fair market value of the timber removed. The trial court based its award of damages on what it determined was the fair market value of Howes' timber at the time of the *1223 injury. We feel that the trial court judge employed the correct legal standard.
The trial court judge also awarded Howes $2500.00 for the loss of aesthetic value of his trees. Rocquin contends that Howes suffered little or no aethestic loss. An award of damages under LSA R.S. 56:1478.1 does not preclude recovery for loss of aesthetic value. Thibodeaux v. Western World Ins. Co., 391 So.2d 24 (La. App. 3rd Cir.1980). The record reveals that Rocquin did not merely damage, but destroyed, many of Howes' trees. These trees were on or near the boundary between the two adjoining tracts and served as a buffer zone between the two properties. The property between this buffer zone and Howes' home was already cleared. A buffer zone between two pieces of property is something that cannot be sufficiently replaced by mere fencing. The beauty of such a natural boundary will not be completely restored for many years. We note also that since becoming owner of his tract, Howes had never cut the trees between the two properties. Howes also testified that he intended to let his son build a home on the south side of the canal. After carefully reviewing the photographs in the record and the testimony, we conclude that the award of $2500.00 for loss of aesthetic value is appropriate in this case. We are also of the opinion that such an award is within the considerable discretion vested in the trial court. Thibodeaux, supra.
Finally, Rocquin has argued that Howes did not establish how much of the cleared land was his property. We find Rocquin's argument to be without merit under the circumstances. In his findings, the trial court judge said in part:
This matter was heard by the Court several years ago. At the conclusion of the testimony it was held open for the deposition of a witness and for the attorneys to go out to the property and measure the distance from the quarter section line to the canal on both the east and west sides, so as to reflect the amount of land involved in this dispute. While there has been no formal stipulation entered in the record, plaintiff's exhibit number two (the appended map) reflects certain distances which were not on said exhibit at the time of trial. Accordingly, the Court will accept them as agreed to by the parties, unless objection is made prior to signing of the judgment.
These findings were filed on May 17, 1983. Both parties had until the signing of the judgment on June 13, 1983, to object or clarify. Neither did. Therefore, we consider that both parties were satisfied with the trial court's assessment of property dimensions.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
*1224