McDonald, j.
|¡>In this suit involving the unlawful cutting of trees without the owner’s consent, *485 defendant, Joseph Steib, appeals a district court judgment in favor of plaintiffs, Dr. Ronnie Mathews and Mary Elizabeth Mathews (hereinafter collectively as “Mathews”), who answer the appeal. For the following reasons, we amend the judgment and affirm as amended.
FACTS AND PROCEDURAL BACKGROUND
Mathews and Mr. Steib live next door to each other in Slaughter, Louisiana. Mathews purchased his property in 1980, had it surveyed, and built a barbed wire fence on the north side of the property varying from four to nine inches onto Mathews’ side of the property line. Over time, a “buffer zone” of trees and bushes grew naturally along the barbed wire fence inside Mathews’ property line. In 1997, Mr. Steib purchased his property adjacent to Mathews. After several years of disputes over Mr. Steib cutting some of Mathews’ shrubs and damaging the barbed wire fence, Mathews built a six-foot tall wooden fence approximately two feet south (further onto Mathews’ property) of the barbed wire fence. As the disputes and cutting continued, Mathews again had his land surveyed in 2000, which showed his property line extended north past the barbed wire fence by a few inches and that no part — barbed wire fence, wooden fence, nor anything in between — belonged to Mr. Steib. Photos were taken of the survey stakes, and these photos, as well as a copy of the survey map, were sent to Mr. Steib.
On April 17, 2007, Mr. Steib had Larry Barnes cut down several trees between the barbed wire fence and the wooden fence. The same day, Mathews filed a police report and contacted his attorney. However, Mr. Steib continued to cut down more trees and bushes on at least three more occasions — April 30, May 18, and May 25, 2007. Approximately 62 trees were cut down spanning 405 feet of the buffer zone. Mathews filed suit on June 5, 2007. On July 23, 2007, the | .¡district court issued a preliminary injunction prohibiting Mr. Steib or his agents from cutting any more of the foliage.
A bench trial was held before Judge Wilson Fields on May 13, 2010, and on August 27, 2010, the court rendered judgment with oral reasons in favor of Mathews and awarded him the following damages:
1. Fair Market Value of Trees $ 9,071.00
2. Labor for replanting trees $ 702.00
3. Materials and delivery for replanting $ 1,914.44
4. Moving wooden fence to property line $ 5,565.00
5. Expert fee of L.D. Kelleher (arborist) $ 1,000.00
6. Deposition of Larry Barnes $ 200.00
7. Deposition of Joseph Steib $ 438.65
8. Deposition of Bridget Steib $ 100.55
9. Mental Anguish $ 5,000.00
Total $23,991.64
Mr. Steib appeals this judgment, raising the assignment of error that the court erred in finding against him “as the evidence clearly indicated an ill defined boundary line between the two tracts of land in question.”
Mathews answered the appeal, asking the judgment be modified in the following ways: (1) to award treble damages pursuant to La. R.S. 3:4278.1; (2) to award attorney fees incurred in the trial court; (3) to award attorney fees and costs incurred in connection with this appeal; and (4) to award damages for a frivolous appeal.
TREBLE DAMAGES CLAIM
Louisiana Revised Statute 3:4278.1 is commonly referred to as the “timber trespass” or “timber piracy” statute, Sullivan v. Wallace, 10-0388, p. 6 (La.11/30/10), 51 So.3d 702, 706, and provides in pertinent part:
*486 A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
|4B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney’s fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
First, we question the applicability of La. R.S. 3:4278.1 in this case. In Sullivan v. Wallace, 10-0388 at p. 11, 51 So.3d at 709, the Louisiana Supreme Court concluded that the purpose behind the timber trespass statute “is to protect those with interests in trees from loggers who enter their property without permission to harvest timber illegally.” Thus, it was “not directed to co-owners of timberlands who act without the permission of their co-owners....” Id. Recently, in Loutre Land and Timber Company v. Roberts, 45,355 (La.App. 2 Cir. 7/27/11), 72 So.3d 403, 408, the court used the same language from Sullivan to find that when “no merchantable timber was harvested, removed and sold by [the defendant] ... his actions on [plaintiffs] property appear to fall outside this statutory purpose.” (Emphasis added).
While it is the judicial function to interpret the laws, it is the legislative function to draft and enact them. When interpreting legislative enactments, it is presumed that “every word, sentence, or provision in the law was intended to serve some useful purpose.” Lasyone v. Phares, 01-1785, p. 4 (La.App. 1 Cir. 5/22/02), 818 So.2d 1068, 1071, writ denied, 02-1711 (La.10/14/02), 827 So.2d 423. Courts must follow “the true meaning of legislative enactments as actually written, | ^leaving to the legislature changes in its statutes.... ” Gulf States Utilities Company v. Dixie Electric Membership Corporation, 259 La. 777, 252 So.2d 670, 673 (La.1971) (Summers, J., dissenting from the denial of writs).
In the instant case, no merchantable timber was harvested, removed or sold by Mr. Steib like in Loutre Land. The record shows the trees in this case were tallow, black cherry, sweet gum, water oak, yaupon, and other bushes. However, despite being commonly referred to as the “timber trespass” or “timber piracy” statute, La. R.S. 3:4278.1 clearly is entitled, “Trees, cutting without consent; penalty” and does not distinguish in its plain language between merchantable timber or *487 other trees and bushes. Although La. R.S. 3:4278.1 may be interpreted to exclude cases such as the one at hand not involving “merchantable timber,” the statute does not clearly make this distinction. The legislature could have made the distinction that the “timber trespass” statute, in fact, only applies to timber and/or merchantable timber. However, the legislature did not make that distinction, and, thus, the statute as enacted applies to all persons who enter property and remove any trees without consent of the owner.
The treble damages provisions of La. R.S. 3:4278.1 are punitive in nature and must be strictly construed; therefore, it is only when a person clearly violates its provisions that he will be assessed the severe penalty of treble damages. Howes v. Rocquin, 457 So.2d 1220, 1222 (La.App. 1 Cir.1984). Even good faith violators of the statute shall be liable for treble damages “if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.” La. R.S. 3:4278.1(C). The district court denied Mathews treble damages, because the court found that Mr. Steib was in good faith.
Mr. Steib admitted that Mathews did not consent to the trees being cut; however, he claims that the property line was “ill defined” and, therefore, he did | Bnot know the trees were on Mathews’ property. He further claims he was in good faith since the cut bushes and trees were between the barbed wire and wooden fence — the apparent “ill defined” property line.
The October 2000 survey clearly defined the property line, and photos showed that the barbed wire fence was several inches south of the survey stakes. Mathews testified at trial that this 2000 survey was done in response to earlier incidents of Mr. Steib cutting down trees without his consent. In November 2000, Mathews sent Mr. Steib a certified letter with the survey map and copies of the photos. However, in 2007, Mr. Steib had approximately 62 trees cut down over at least four different days in the area clearly defined as Mathews’ property by the survey and photos. On April 17, 2007, Mathews filed a police report and had an attorney notify Mr. Steib to cease cutting trees until appropriate judicial review. However, more trees were cut on at least three occasions after those events.
The evidence in the record cannot support the district court’s conclusion that Mr. Steib was in good faith and unaware that his actions were “without the consent or direction of the owner or legal possessor of the trees.” La. R.S. 3:4278.1(C). Mr. Steib admits he did not have Mathews’ consent, and the police report and letter from Mathews’ attorney after the April 17th cuttings were clear notice that the owner did not consent. Furthermore, Mr. Steib’s claim that the boundary line was “ill defined” is without merit due to his receipt and knowledge of the 2000 survey and photos. The district court’s determination that Mr. Steib acted in good faith, although without consent of the owner, was erroneous and clearly wrong. Mathews is entitled to treble damages in the amount of three times the fair market value of the trees.
The district court found the fair market value of the trees was $9,071.00; therefore, Mathews is entitled to $27,213.00. Although the expert appraisal of the trees estimated the fair market value at $11,833.83, rather than $9,071.00, this 17determination was at the district court’s discretion and nothing suggests it is clearly wrong. Additionally, Mathews’ answer to the appeal specifically prays that the judgment be modified to reflect three *488 times the $9,071.00 amount awarded by the district court.
ATTORNEY FEES
Louisiana Revised Statute 3:4287.1 provides for payment of a reasonable attorney fee by a good faith violator of the statute who fails to make payment within thirty days after notification and demand by the owner. La. R.S. 3:4278.1(D). However, those that “willfully and intentionally” violate the provisions of the statute are liable for payment of a reasonable attorney fee regardless of when payment of the judgment is made. La. R.S. 3:4278.1(B).
The district court did not award attorney fees to Mathews, because it found Mr. Steib was in good faith, but noted he would have thirty days under the statute to pay the judgment or else Mathews could seek reasonable attorney fees. Since the district court’s finding that Mr. Steib was in good faith is clearly wrong, Mathews is entitled to a reasonable attorney fee. He requests $20,273.50 and costs incurred in connection with this appeal.
Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge. Corbello v. Iowa Production, 02-0826 (La.2/25/03), 850 So.2d 686, 710. Having carefully considering Mathews’ documentation in support of his claim for attorney fees, we award $15,552.50 as reasonable attorney fees for pursuing this matter at the trial level, in accordance with La. R.S. 3:4278.1(B).
|sAs for fees incurred in this appeal, we find Mathews’ claim of damages for a frivolous appeal is without merit. Therefore, we decline to award attorney fees to Mathews for the appeal.
APPLICABILITY OF GENERAL TORT LAW
Louisiana Revised Statute 3:4278.1 does not preclude recovery for other elements of damage suffered by the owner of an immovable as a result of trespass such as “reforestation costs, diminished aesthetic value, loss of growth value, restoration of the land surface, general damages for trespass, and mental anguish.” Callison v. Livingston Timber, Inc., 02-1323, p. 3 (La.App. 1 Cir. 5/9/03), 849 So.2d 649, 652. A person injured by trespass or the fault of another is entitled to full indemnification for the damages caused. Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess some damages based upon all of the facts and circumstances. Versai Management, Inc. v. Monticello Forest Products Corporation, 479 So.2d 477, 484 (La.App. 1 Cir.1985). Therefore, in addition to the amount recoverable under La. R.S. 3:4278.1, damages are recoverable, if supported by the record, for: the costs of removing stumps and clearing the land after a timber trespass, Versai Management, Inc., 479 So.2d at 484; reforestation, Isdale v. Carman, 96-1435, p. 16 (La. App. 3 Cir. 4/2/97), 692 So.2d 687, 695; loss of aesthetic value/buffer zone, Howes v. Rocquin, 457 So.2d at 1223, (La.App. 1 Cir.1984); and mental anguish, Olsen v. Johnson, 99-783, p. 7 (La.App. 3 Cir. 11/3/99), 746 So.2d 740, 745.
The district court awarded damages under general tort law — $702.00 for labor for *489 replanting trees; $1,914.44 for materials and delivery for replanting; $5,565.00 for moving the wooden fence to the property line; and $5,000.00 for mental anguish. However, the record does not support these damages.
| ^Reforestation costs are recoverable in “timber trespass” cases only when supported by the record. In Isdale v. Carman, 692 So.2d at 695, the court found that an award of reforestation costs was supported by the record, because the evidence showed that the tract needed to be burned, then replanted, because no pine seedlings or close older pines existed which could produce seedlings to reseed the entire tract.
In the instant case, Mathews testified at trial in April 2009 — two years after Mr. Steib’s tree cutting — that he replanted the area between his barbed wire and wooden fence with bamboo or cane at a cost of $1,914.44 in materials and $702.00 in labor. Further, Mathews testified that in the same month of April 2009, he had his wooden fence moved two and half feet over onto the barbed wire fence at a cost of $5,565.00 in order to allow planting of a new buffer zone. He claimed between May 2007 and April 2009 that the area between his barbed wire fence and the wooden fence was continually sprayed with herbicide; however, no other evidence of this herbicide spraying was offered at trial.
The fact alone that Mathews paid for the cane to be planted and the fence to be moved does not support that these specific expenses were for restoration or reforestation. Unlike the burning and replanting of the land in Isdale, the cane and moving of the fence were not necessary for Mathews’ restoration. The material and labor for planting cane was not a reforestation or restoration effort when Mathews claimed he moved the fence in order to allow his “buffer zone” to regrow. The cane was not the “restoration” of the trees or the “buffer zone” that Mathews felt he lost by Mr. Steib’s actions. Mathews may have been entitled to damages to replant the tallow, black cherry, sweet gum, water oak, and yaupon that the expert appraiser identified as destroyed. However, without any evidence that moving the fence was necessary to the restoration, or that the planting of the cane |l0was necessary to restore his “buffer zone” or replace his trees, those damages are not supported by the record and are erroneous.
Mental damages are also not recoverable in all cases of “timber trespass.” In Evans v. B.R. Bedsole Timber Contractors, Inc., 521 So.2d 837, 839-41 (La.App. 2 Cir.1988), the court denied the plaintiffs claim for mental damages stating:
The property damage in this case was caused by the defendants’ intentional crossing of a highly visible fence, cutting and removing the plaintiffs trees and reducing them to wood chips. Plaintiff did not prove psychic trauma as a result of this; he did not seek treatment for any mental disorders after the incident ...; he merely testified that he was “upset” and “hurt.” This strikes us as nothing more than normal worry associated with having one’s property damaged by another.
Similarly, in Callison v. Livingston Timber, Inc., 849 So.2d at 655, the court affirmed denial of mental damage when the plaintiffs only showed similar “normal worry” and did not seek medical attention of any kind for their anxieties.
Mathews testified that he wanted to rectify the loss of his trees and that he was upset about the loss of his “buffer zone.” His “buffer zone” of these trees and other bushes, at the time of the tree cuttings, was behind a wooden fence. He did not seek medical attention of any kind or show *490 “psychic trauma;” The record provides absolutely no support for a claim of mental damages. Mathews was rightfully frustrated by the ongoing disputes with Mr. Steib; however, a neighborly dispute and the loss of these tallow trees and other shrubs behind his fence show only a mere upset, hurt, and “normal worry.” The $5,000.00 mental anguish damages were also erroneous.
DECREE
For the above reasons, the district court judgment is affirmed, as amended, in favor of Mathews. The judgment is amended to provide for the following:
(1) The amount of treble damages is increased to $27,213.00 for the fair market value of the trees;
(2) An award of $15,552.50 is added for a reasonable attorney fee; and
|n(3) The award of general damages of $702.00 for labor of replanting, $1,914.44 for moving the wooden fence, and $5,000.00 in mental anguish, is vacated.
The general damages for the depositions and expert fee are affirmed. The final amended damages awarded to Mathews are $42,765.50. Costs of this appeal are to be split equally between the parties.
AMENDED, AND AFFIRMED AS AMENDED.