HOLDRIDGE, J.
Defendant/appellant, W & T Offshore, L.L.C., appeals a judgment of the trial court denying its claim for injunctive relief and damages against plaintiffs/appellees, Texas Brine Company, L.L.C., and Texas Brine Corporation.[1]
*973 FACTUAL AND PROCEDURAL HISTORY
In 1979 Texas Brine[2] entered into a "Salt and Underground Storage Lease" (1979 lease) with W & T's predecessors in interest to utilize land in Lafourche Parish, identified as Estate of E.W. Brown, et al., located at Section 59, 64, and 71, T15S-R15E (the Brown property) for conducting salt mining operations.[3] The 1979 lease had an initial term of ten years and would last "so long thereafter as salt or salt brine [were] produced from the property[.]" The 1979 lease included a personal servitude of right of use, granting Texas Brine the authority to construct a pipeline on the leased premises, which provided, in pertinent part:
[Texas Brine] shall have the right to construct, operate and maintain a pipeline for the transportation of brine over and across additional property of Lessor comprising the North one-half Section ... of Section 64 and all of Section 59, Township 15 South, Range 15 East, Parish of La[f]ourche, Louisiana, on such portion of the property as designated by [Texas Brine] and as approved by Lessor, such approval not to be unreasonably withheld. (Emphasis added.)
In 1980, Texas Brine constructed a fourteen inch in diameter and 6.7 mile long pipeline across Section 59 of the Brown property pursuant to the 1979 lease. If properly maintained, it was anticipated that the pipeline would be useful for approximately thirty years. In 1993, W & T attained a 23.66% undivided interest in the Brown property becoming the largest co-owner of the Brown property.
In February 2014, Texas Brine filed an application for a permit from the U.S. Army Corps of Engineers for the construction of a second pipeline (replacement pipeline) on Section 59 of the Brown property to replace the fourteen inch brine pipeline. The replacement pipeline was to be constructed eight feet away from the original pipeline. W & T claimed it was not consulted before Texas Brine sought its permit from the U.S. Army Corps of Engineers.
In November of 2014, Texas Brine began negotiations with W & T and the owners of the remaining 76.34% undivided interest of the Brown property to abandon the first pipeline and construct a replacement pipeline adjacent to the existing line. On August 7, 2015, Texas Brine filed a "Pipeline Right-of-Way" Agreement in the conveyance records of Lafourche Parish, showing that 76.34% of the owners of the Brown property granted Texas Brine "the right to lay, construct, maintain, replace, change the size of, move, remove and operate a single pipeline not to exceed eighteen inches ... diameter upon completion, and no more than twenty-four ... inches upon completion of a replacement pipeline ... for the transportation of brine and other fluids[.]" Texas Brine alleged that this agreement allowed it to construct a replacement pipeline adjacent to the original pipeline. W & T did not join the other 76.34% co-owners in agreeing to sign the "Pipeline Right-of-Way" Agreement.
Texas Brine allegedly began construction of the replacement pipeline in August of 2015 and it was completed on November 7, 2015. The replacement pipeline was larger and entirely separate from the first pipeline, as it was eighteen inches in diameter, approximately seven miles long, and *974 approximately eight feet away from the original pipeline.
On November 12, 2015, counsel for W & T sent a letter to Texas Brine, informing it that W & T did not consent to the construction of the replacement pipeline located on the Brown property and that consent of all of the co-owners of the Brown property was required for the granting of a pipeline right of way on the property, and further requesting that Texas Brine "immediately cease and desist from the illegal construction activities on its property."
In response, Texas Brine filed a Petition for Declaratory Judgment and Injunctive Relief on November 24, 2015, (docket number 128754) alleging that the 1979 lease granted it "the right to lay pipelines, and to build roads and other structures on the [Brown] Property as necessary to produce, save, take care of, treat, transport and own said salt and salt brine." Texas Brine stated that it was entitled to a declaratory judgment recognizing that it was entitled to replace the brine pipeline crossing the Brown property under the terms of the 1979 lease and the 2015 "Pipeline Right-of-Way" Agreement.
On November 24, 2015, W & T filed a Petition for Temporary Restraining Order (TRO) and Preliminary and Permanent Injunctive relief (docket number 128742). The trial court granted W & T's request for TRO restraining, enjoining, and prohibiting Texas Brine from continuing the unauthorized pipeline construction on the Brown property.
On December 1, 2015, Texas Brine filed a "Motion for Dissolution of Temporary Restraining Order and Damages" (docket number 128742). On December 3, 2015, W & T amended its petition to request a claim for injunctive relief, declaratory relief, and damages (docket number 128742). In its amended petition, W & T alleged that Texas Brine did not have the authority to construct a new pipeline across the Brown property pursuant to La. C.C. art. 805.[4]
A hearing was held on December 4, 2015, on W & T's petition for a preliminary injunction.[5] At that hearing,[6] the trial court dissolved W & T's TRO concurrently with its request for a preliminary injunction because Texas Brine had completed the construction of the replacement pipeline.
In January 2016, Texas Brine filed a motion to consolidate docket number 128742 with W & T's petition requesting a preliminary injunction filed in November of 2015, bearing docket number 128754. The trial court granted the motion to consolidate. Thereafter, on February 1, 2016, after several amended petitions were filed, W & T filed its "Third Amended Petition for a Possessory Action, Injunctive Relief, Mandatory Injunction, Trespass, and Damages." In its petition, W & T first asserted that it was entitled to a possessory action, requesting that the trial court maintain W & T in its possession and enjoyment of the Brown property, which Texas Brine disturbed *975 by filing the "legally deficient Right of Way Agreement[.]" Secondly, W & T alleged that it was entitled to a preliminary and a permanent injunction because Texas Brine "improperly constructed a Second Pipeline on the Non-Leased premises and ha[d] disturbed and continue[d] to disturb W & T's possession of the [Brown property.]" Additionally, W & T alleged that it was entitled to a mandatory injunction, requiring Texas Brine to remove the replacement pipeline and restore the Brown property to the state in which it existed prior to its construction. W & T further alleged that the trial court should award it damages for trespass for Texas Brine's unauthorized construction of the replacement pipeline. Lastly, W & T maintained that Texas Brine acted in bad faith and the trial court should award it damages.
In response, Texas Brine filed an "Amended Petition Requesting Preliminary Injunction" requesting a mandatory preliminary injunction requiring W & T to grant it a servitude allowing the replacement pipeline to be placed in service during the pendency of the proceedings. Texas Brine alleged that it was entitled to injunctive relief because it was in the public's interest to minimize the risks of environmental damage which may be caused if a leak were to occur. Texas Brine further alleged that W & T's "refusal to acknowledge Texas Brine's right to place the replacement pipeline in service amount[ed] to an interference with the real rights granted to Texas Brine in the 1979 [lease.]"
On April 5, 2016, the trial court held a hearing on W & T's injunctive relief claim. John Sergo, the Vice President of United Brine Services Company, LLC, a subsidiary of Texas Brine, testified that Texas Brine was going to remove the original pipeline on the Brown property. On April 22, 2016, the trial court signed a judgment granting Texas Brine injunctive relief. The trial court also granted Texas Brine a mandatory injunction in favor of Texas Brine, stating in its reasons for judgment that the "court fe[lt] that as a public policy interest to protect the environment, a mandatory injunction should be issued to put the 'new' pipeline into service in order to prevent further leakages." The trial court's judgment further denied W & T's request for injunctive relief. In response, Texas Brine filed a motion for new trial stating that the April 22, 2016 judgment did not fix an amount for security as required by La. C.C.P. art. 3610, and it "did not describe in reasonable detail the act or acts to be taken."
After a hearing was held, the trial court signed a judgment on July 8, 2016, stating that "a preliminary injunction be issued against W & T ... restraining and enjoining W & T from interfering, in any manner whatsoever, with the operation or maintenance of the replacement pipeline constructed by Texas Brine ... across property situated [on the Brown property.]" A bench trial was held on October 11, 2016 on the parties remaining claims. After hearing arguments from both parties, the trial court signed a judgment on January 27, 2017, dismissing with prejudice W & T's possessory action claim, petition for permanent injunction, claim for trespass and damages, and its bad faith claim against Texas Brine. The trial court granted Texas Brine's petition for declaratory relief stating in its judgment "that Texas Brine ha[d] the right to replace the original 14 inch pipeline with an 18 inch line eight feet away from the sight of the original pursuant to La. [C.C.] art. 642." The trial court issued reasons for judgment, stating "that the right to replace the original pipeline with another outside of the original's footprint was necessary to the enjoyment of the rights granted under the *976 lease[.]" W & T subsequently appealed the January 27, 2017 judgment.
On April 27, 2017, this court issued a rule to show cause, stating that the January 27, 2017 judgment failed to "describe the immovable property at issue with sufficient particularity" in accordance with La. C.C.P. art. 1919.[7] This court referred the rule to show cause to the panel hearing the merits of the appeal. The trial court signed an amended judgment on May 30, 2017, correcting the error by adding the legal description of the subject property in the final judgment. Therefore, the appeal is maintained.
APPLICABLE LAW
There are two kinds of servitudes: personal servitudes and predial servitudes. La. C.C. art. 533. Personal servitudes of right of use confer upon a person a specified use of an estate less than full enjoyment. La. C.C. arts. 534 and 639. The right of use may confer only an advantage that may be established by a predial servitude. La. C.C. art. 640. Rights of use are real rights which confer limited advantages of use or enjoyment over an immovable. Richard v. Hall, 2003-1488, (La. 4/23/04), 874 So.2d 131, 145. A right of use includes the rights contemplated or necessary to enjoyment when the servitude was created. La. C.C. art. 642. Additionally, rights that may later become necessary are included in the right of use, provided that a greater burden is not imposed on the property, unless the title stipulates otherwise. La. C.C. art. 642. Further, a right of use is regulated by application of the rules governing predial servitudes to the extent that their application is compatible with the rules governing a right of use servitude. La. C.C. art. 645.
Judgments regarding servitudes are reviewed under the manifest error standard of review. An appellate court may not set aside a trial court's findings of fact unless they are manifestly erroneous or clearly wrong. To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court's finding and that the record shows the finding to be manifestly erroneous. 1026 Conti Condominiums, LLC v. 1025 Bienville, LLC, 2015-0301 (La. App. 4 Cir. 12/23/15), 183 So.3d 724, 727, writ denied, 2016-0144 (La. 3/14/16), 189 So.3d 1067.
DISCUSSION
Motion to Strike
We must first address W & T's Motion to Strike Texas Brine's brief on appeal. W & T alleges that Texas Brine's brief was in violation of Uniform Rule 2-12.2(C), which prohibits language in briefs from including "vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution." W & T asserts that Texas Brine's brief alleged that Tracy W. Krohn, the owner of W & T, extorted Texas Brine during the pipeline negotiations. W & T argues that the record does not contain any elements of extortion, and no such claim has been presented prior to Texas Brine's brief on appeal. After reviewing the record, we grant W & T's motion to strike the portions of Texas Brine's brief referencing to any extortion claim of Mr. Krohn from the record, and we admonish Texas Brine's counsel to *977 abide by our rules and to consider the consequences of making future accusations of criminal behavior against parties to litigation in brief to this court.
Use and Extent of the Servitude
In its second assignment of error, W & T asserts that the 1979 lease evidences the parties' mutual intent and is the law between the parties. Therefore, W & T argues that the trial court erred in "using pipeline lifespan estimates" to alter the intent of the parties in order to expand the 1979 lease and find that Texas Brine's right to replace the pipeline was contemplated or necessary to the enjoyment of its personal servitude of right of use. W & T does not dispute that Texas Brine was allowed to replace the original pipeline; however, it argues that in accordance with the 1979 lease, Texas Brine had to remove the original pipeline and replace it with a new pipeline in the same location as the original. Additionally, W & T argues that because the 1979 lease is silent as to the anticipated lifespan of the pipeline, replacement of the pipeline, size limitation of the pipeline, or specific location of the pipeline in Section 59, all doubt as to the existence and extent of the servitude shall be resolved in favor of the servient estate. See La. C.C. art. 730.
Texas Brine counters that it had a right to construct the replacement pipeline in accordance with La. C.C. art. 642, because it became necessary for the enjoyment of the personal servitude of right of use. Texas Brine argues that the 1979 lease gave it the authority to maintain the original pipeline and, consistent with its purpose, after decades of repairing the original pipeline, the only way to safely maintain the original pipeline was by replacing it with a second pipeline. Texas Brine argues that a servitude holder may use a greater area of the property than that specified in the grant in connection with its use of the servitude, so long as it compensates the landowner for any damages caused by the work. Therefore, Texas Brine argues that the trial court correctly stated in its reasons for judgment that "La. [C.C.] art. 642 does provide Texas Brine ... the right to replace the original pipeline ... [because] the right to replace the original pipeline with another outside of the original's footprint was necessary to the enjoyment of the rights granted under the [1979] lease[.]"
The 1979 lease created a personal servitude of right of use on the Brown property. The use and extent of the personal servitude of right of use is regulated by the 1979 lease and must be interpreted pursuant to the general rules for interpreting contracts, found in La. C.C. art. 2045 et seq. , and the special rules for interpreting servitude contracts found in La. C.C. arts. 697 - 734. Carbo v. City of Slidell, 2001-0170 (La. App. 1 Cir. 1/8/03), 844 So.2d 1, 11, writ denied, 2003-0392 (La. 4/25/03), 842 So.2d 400. The cardinal rule of contractual interpretation is that the intention of the parties governs. See Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 2012-2055 (La. 3/19/13), 112 So.3d 187, 192. Thus, the intention of the parties is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical basis to the instrument in its entirety. Dunn v. Potomac Ins. Co. of Illinois, 94-2202 (La. App. 1 Cir. 6/23/95), 657 So.2d 660, 663.
A personal servitude of right of use may be established by juridical act, such as a contract. See Carbo, 844 So.2d at 11. The 1979 lease established a right of use servitude in favor of Texas Brine giving it the right to construct, operate, and maintain a pipeline for the transportation of brine over and across the Brown property for *978 ten years and "so long thereafter as salt or salt brine [were] produced from the [Brown property.]" Texas Brine has continuously mined salt through a brine pipeline since 1980 on the Brown property and intends to continue in the future. Texas Brine alleges that it maintained the original pipeline by constructing a replacement pipeline in order to protect the Brown property.
At trial, Bill Wood, who was employed by Texas Brine as a chemical engineer, testified as an expert regarding the original pipeline's life expectancy. Mr. Wood testified that the life expectancy of the original pipeline at the time of its construction was anywhere from twenty to thirty years and it was prudent that it be replaced. Mr. Wood testified that the original pipeline was left in place after construction of the replacement pipeline because it was standard practice. Mr. Sergo also testified at trial and stated that Texas Brine was unable to construct the replacement pipeline on top of the original pipeline on the Brown property.
We must determine if it was necessary to the enjoyment of the personal servitude of right of use for Texas Brine to replace the original pipeline with a replacement pipeline as close as practically possible to the original. Louisiana Civil Code article 642 specifically states that a personal servitude of right of use includes "rights contemplated or necessary to enjoyment at the time of [the servitude's] creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property, unless otherwise stipulated in the title." (Emphasis added.) Thus, La. C.C. art. 642 considers two types of rights that are not specifically addressed in the granting document, which include those necessary to the enjoyment at the time of its creation and those that may later become necessary. The trial court found that the right to replace the original pipeline with a replacement pipeline as close as practically possible to the original was necessary to the enjoyment of the rights granted under the 1979 lease. In its reasons for judgment the trial court stated, in pertinent part:
Based upon the evidence admitted and testimony adduced at trial, the Court finds that La. [C.C.] art. 642 does provide Texas Brine Co. the right to replace the original pipeline. Specifically, the Court finds that the right to replace the original pipeline with another outside of the original's footprint was necessary to the enjoyment of the rights granted under the lease and contemplated at the time of execution. The caustic nature of the brine necessarily would require a replacement line once the original line had served its purpose considering the leased property has reserves capable of production for potentially two centuries or more because of the indeterminate nature of the lease. Thus, the Court holds that Texas Brine does have the right to lay a replacement pipeline eight feet away from the original line since this new location is as close as practically possible to the original area.
* * * *
Thus reading the law of personal servitudes together with the relevant provisions of the Mineral Code and accompanying jurisprudence, the Court hereby finds that based on the facts of this matter, the right for Texas Brine to enlarge the servitude area to eighteen inches is a right necessary to the enjoyment of the rights under the mineral lease at the time of its execution in 1979.
However, another issue concerns the parties' rights under La. [C.C.] art. 642.... Specifically, whether the final clause of La. [C.C.] art. 642 applies to *979 not only those rights that "may later become necessary" for the enjoyment of servitude, but also whether this "greater burden" language applies to those rights that were contemplated or necessary to the enjoyment of the servitude at the time of its execution.
La. [C.C.] art. 10 states in whole: "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Thus, the Civil Code prefers purposive constructions rather than literal constructions when the language itself is susceptible of different meanings. La. [C.C.] art. 10, cmt. b. Here, the language of La. [C.C.] art. 642 is susceptible of different meanings; specifically, whether the article's clause concerning greater burdens modifies the entire text or rather just those rights that later become necessary.
Because article 642 is primarily an expansion, rather than restriction, of rights granted under rights-of-use, the Court holds that the "greater burden" language of the article does not modify those rights that were contemplated or necessary to the enjoyment of the right of use at the time of its creation. This construction is necessary since it "best conforms to the purpose of the law."
After reviewing the record as a whole, we find that the trial court correctly determined that replacement of the original pipeline is proper under article 642, as it became necessary for the enjoyment of the personal servitude of right of use granted to Texas Brine under the 1979 lease. Although the 1979 lease does not include specific language regarding the replacement of the original pipeline, it is unreasonable to conclude that the original parties contracting the 1979 lease did not contemplate that the original pipeline constructed on the Brown property would eventually need replacement. If a contract is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in light of its purpose. La. C.C. art. 749 ; Platt v. Rimmer, 2016-223 (La. App. 3 Cir. 10/12/16), 203 So.3d 553, 556. In the instant matter, the 1979 lease states that its purpose is "for the purpose of investigating, exploring, prospecting, drilling and mining for and producing salt and salt brine, laying pipe lines ... and other structures thereon to produce ... transport ... salt and salt brine[.]" The 1979 lease further gives Texas Brine the right to "construct, operate and maintain a pipeline" on the Brown property. In order to maintain a pipeline, the lease must have contemplated that a new pipeline would have to be constructed when the original pipeline needed to be replaced.
Considering the testimonial and documentary evidence in the record establishing that the original pipeline had been leaking for years and many repairs had been made, it is evident that replacement of the original pipeline was imminent and necessary to Texas Brine's enjoyment of its personal servitude of right of use. It is also evident from the record that the replacement pipeline was constructed as close as practically possible to the original pipeline. The 1979 lease evidences that the purpose of the personal servitude right of use is for producing salt brine and laying pipelines. In light of the purpose of the 1979 lease, we can determine the parties' intent in regard to the scope of the personal servitude right of use was to have the continuous production and transportation of salt brine over the Brown property, which requires the construction of a replacement pipeline. Therefore, we find that the 1979 lease included the right for Texas Brine to construct a replacement pipeline and this right is afforded to it under *980 La. C.C. art. 642 as a right for the enjoyment of its personal servitude of right of use.[8]
Trespass Claim
Furthermore, we find that Texas Brine should not have constructed a larger replacement pipeline without the consent of all the co-owners of the Brown property. Louisiana Civil Code article 805 provides that the consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivision. Louisiana Civil Code article 804 provides that "[s]ubstantial alterations or improvements to the thing held in indivision may be undertaken only with the consent of all the co-owners. " (Emphasis added.) Louisiana Civil Code article 801 provides that "[t]he use and management of the thing held in indivision is determined by agreement of all the co-owners. " (Emphasis added.)
While all of the co-owners, including W & T, of the Brown property were not required to consent to the installation of the replacement pipeline, their consent was necessary to enlarge the replacement pipeline over Section 59 of the Brown property. We find that the 1979 lease grants Texas Brine the right to construct a replacement pipeline as close as practically possible to the original pipeline. However, Texas Brine did not obtain the consent of all co-owners of the Brown property before starting construction of the larger replacement pipeline. Thus, Texas Brine is responsible for any trespass damages or any other damages caused by constructing a larger replacement pipeline without the consent of all of the co-owners on the Brown property because this constituted an alteration and/or improvement on the property that was not provided for in the 1979 lease. As noted in the trial court's reasons for judgment, "the language of the servitude conferral is silent as far as the width of the pipeline is concerned."[9] Any increase in the size of the pipeline is a substantive improvement and alteration on the Brown property, which would require all of the co-owners consent. See La. C.C. art. 804 ; see Ethridge v. UCAR Pipeline, Inc., 2012-03086, 2014 WL 2155219, at *3 (W.D. La. May 22, 2014).
Trespass is defined as an unlawful physical invasion of the property or possession of another person. Davis v. Culpepper, 34,736 (La. App. 2 Cir. 7/11/01), 794 So.2d 68, 75, writ denied, 2001-2573 (La. 12/14/01), 804 So.2d 646. A trespasser is one who goes upon another's property without his consent. Id. A person damaged by trespass is entitled to full indemnification. Id. We find that W & T has a trespass claim against Texas Brine for the unauthorized construction of the larger replacement pipeline on the Brown property because all of the co-owners did not consent to the construction of the replacement pipeline. W & T is entitled to full indemnification for the damages caused. Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess *981 some damages based upon all of the facts and circumstances. Mathews v. Steib, 2011-0356 (La. App. 1 Cir. 12/15/11), 82 So.3d 483, 488, writ denied, 2012-0106 (La. 3/23/12), 85 So.3d 90.[10] Therefore, we remand this matter to the trial court to determine the amount of damages that should be awarded to W & T, including the trespass damages for constructing a larger pipeline without its consent, as well as the amount owed to W & T for the servitude expansion on the Brown property.
CONCLUSION
For the above reasons, we affirm the trial court's May 30, 2017 judgment, in part, insofar as it dismissed with prejudice W & T's possessory action, permanent injunction, and bad faith claim.[11] We vacate the trial court's May 30, 2017 judgment, in part, insofar as it dismissed with prejudice W & T's trespass and damage claims. This matter is remanded to the trial court for further proceedings consistent with this opinion. All costs of this appeal are divided equally between the parties.
MOTION GRANTED; AFFIRMED IN PART; VACATED IN PART; AND REMANDED IN PART.

E.W. Brown, Jr. Properties F/B/O, LDSBB, LP, Charles E. Brown, Jr. Properties, LP, Carrie B. Henley Properties, LP, Robert S. Brown Properties, LP, Richard E. Brown, Michael S. Brown, Mary Robbins Brown-Jones, JCC Brown Properties Louisiana, LP, Donner Properties, LLC, Diana L. Chance, Agent for Donner, Estate of Carolyn B. Negley, Estate of Joan B. Winter, Odom Louisiana Properties, LLC, filed an amicus curiae brief in support of Texas Brine's appeal of this matter. Louisiana Landowners Association, Inc. filed an amicus curiae brief in support of W & T's appeal of this matter.

Texas Brine Company was the successor-in-interest to Texas Brine Corporation.

W & T was a Texas Corporation that jointly owned an undivided interest in the Brown property.

Louisiana Civil Code article 805 states "[a] co-owner may freely lease, alienate, or encumber his share of the thing held in indivision. The consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivision."

Following the December 4, 2015 hearing, W & T filed a second supplemental and amended petition for injunctive and declaratory relief, as well as a TRO and damages. On the same day, W & T filed a second motion for preliminary injunction.

The record only contains a portion of the transcript from this hearing and does not contain the trial court's judgment.

Louisiana Code of Civil Procedure article 1919 states "[a]ll final judgments which affect title to immovable property shall describe the immovable property affected with particularity."

The 1979 lease does not contemplate that Texas Brine can have two servitudes on the Brown property. If the replacement pipeline is put into use, the original pipeline is either to be abandoned or removed in a manner that does the least amount of damage to the Brown property.

It is noted that W & T did not file an action for an injunction with a request for a TRO until the replacement pipeline had been constructed on the Brown property. In accordance with this opinion, W & T no longer has a right to stop the construction (which had been completed before its TRO action was filed) nor for a mandatory injunction to order Texas Brine to remove the replacement pipeline. However, W & T is entitled to damages for the construction of the larger replacement pipeline that was not provided for in the 1979 lease.

We make no determination at this time as to the proper amount of damages to be awarded to W & T or whether those damages may take in account the increased profits that may be realized by Texas Brine because of the expansion of the replacement pipeline on the Brown property.

We note that the dismissal of W & T's possessory action, permanent injunction, and bad faith claim were not raised on appeal. This court only reviews issues raised on appeal. See Uniform Rules-Courts of Appeal 2-12.4 ; American Motorist Insurance Company v. American Rent-All, Inc., 617 So.2d 944, 947 (La. App. 5 Cir. 1993). Therefore, we will not address those claims as they were not raised in the instant matter.